[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-15090

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 4, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 96-02712-CV-KMM

TRANSAMERICA LEASING, INC.,

Plaintiff-Appellee,

versus

INSTITUTE OF LONDON UNDERWRITERS, YORKSHIER INSURANCE
COMPANY, LTD. "C" ACCOUNT, THREADNEEDLE INSURANCE
COMPANY, LTD., THREADNEEDLE INSURANCE COMPANY, LTD., "A"
ACCOUNT, LONDON ASSURANCE - "PHOENIX LSA" ACCOUNT ZURICH
RE (UK) LTD., INSURANCE COMPANY OF NORTH AMERICA (UK) LTD.,
MARITIME INSURANCE CO., LTD., NORWICH NO. 1 "M" ACCOUNT,
PHOENIX ASSURANCE PLC, COMPAGNIE D'ASSURANCE MARITIMES
AERIENNES ET TERRESTRES, SCOTTISH LION INSURANCE CO., LTD.,
CORNHILL INSURANCE PLC, LONDON & EDINBURGH INSURANCE
COMPANY LIMITED, WURTTEMBERGISCHE, FEUERVERSICHERUNGS
AG, GERLING-KONZERN ALLGEMEINE VERSICHERUNGS AG, TERRA
NOVA INSURANCE COMPANY, LTD., SKANDIA MARINE INSURANCE
COMPANY (UK) LIMITED, CORNHILL INSURANCE COMPANY LTD., "D"
ACCOUNT, INSURANCE COMPANY OF NORTH AMERICA (UK) LTD., "G"
ACCOUNT,

Defendants-Appellants,

QUANTUM INTERNATIONAL,

Defendant,

ADJUSTERS LIMITED,

Movant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(October 4, 2001)**

Before TJOFLAT, BARKETT and MAGILL[*], Circuit Judges.

PER CURIAM:

Transamerica Leasing, Inc. ("Transamerica") sued several insurance

underwriters (the "Underwriters"), alleging that the Underwriters owe

Transamerica damages under an insurance policy. The district court granted partial

summary judgment to Transamerica, and a jury awarded Transamerica

$3,958,981.94 in damages. The Underwriters appeal, and we reverse and remand

for trial.

**I.**

Transamerica is a lessor of ocean cargo containers and related equipment. In

the early 1990s, Transamerica entered into various lease agreements with C.A.

Venezolana de Navigacion ("CAVN"), a Venezuelan government shipping line.

Under these agreements, Transamerica leased various equipment to CAVN,

including containers, trailers, and chassis. CAVN used this equipment to move

---

[*]Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by
designation.

cargo on routes around the world.

The lease agreements between Transamerica and CAVN required CAVN to obtain insurance coverage for the leased equipment, so CAVN acquired "all risk" insurance from the Underwriters. CAVN's first "slip" insurance policy with the Underwriters covered the year beginning June 30, 1991, and named CAVN as the only assured. Subsequently, the parties executed an addendum that stated:

> Noted and agreed as from inception, Named Assured is more precisely as below and not as previously advised: C.A. VENEZOLANA DE NAVIGACION and/or Associated and/or Inter-related Companies and various Lessors. Losses if any are payable to the Assured as their respective interests may appear or order. All other slip terms, clauses and conditions remain unaltered.

The 1991 policy, as well as the policies that followed, stated that it should be interpreted according to "English law and practice." The policies provided all risk coverage for the equipment leased by Transamerica to CAVN, but listed various exclusions and conditions. One such exclusion excepted "loss, damage or expense arising from insolvency or financial default" from coverage.

CAVN again acquired all risk insurance from the Underwriters for the policy year beginning June 30, 1993. The named assureds were: "C.A. Venezolana de Navigacion and/or Leasing Companies as Owners and producers of equipment and/or subsidiary and/or associated and/or affiliated companies." Addendum number one to the 1993 policy, dated October 4, 1993, states: "It is hereby noted

3

and agreed to accept the following as ~~additional assureds~~/loss payees as their respective interests may appear; . . . Transamerica Leasing, Incorporated . . . All other terms, clauses and conditions remain unaltered." The parties dispute the authenticity of this addendum.

The Underwriters again provided CAVN with all risk insurance for the year beginning June 30, 1994, with the policy essentially identical to the 1993 policy. On November 1, 1994, the policy was cancelled due to CAVN's failure to pay premiums.

In July 1994, CAVN informed Transamerica that it had lost track of at least 500 pieces of Transamerica equipment. Transamerica searched for and recovered some equipment but could not locate many units. In October 1994, CAVN informed Transamerica that the units either were lost or damaged and would not be returned.

On November 10, 1994, Susan Esposito, Manager of Risk Management for Transamerica, sent a letter to Rollins Huding Hall, CAVN's United States broker, giving notice of a claim under the 1994 policy for physical damage and loss of 944 containers that had been on hire to CAVN. On December 5, 1995, the Underwriters declined coverage, stating:

> Due to the volume of claims intimated against C.A.V.N. under the
> above policies, the age of several of the claims and the total lack of

assistance insurers have received from C.A.V.N. in identifying the
number of claims lodged with them, insurers hereby formally decline
cover in respect of any claims of whatsoever nature that may fall for
their consideration under any of the policies referred to above.

Insurers hereby repudiate cover under the above policies due to late
notification and failure by CAVN to disclose material facts to
underwriters at each and every renewal subsequent to bankruptcy
proceedings in the Venezuelan Supreme Court.

Transamerica does not know how, or on the precise date on which, the missing and
damaged containers were lost, damaged, or destroyed. CAVN's financial troubles
caused it to cease doing business in July 1994 and to file for protection under
Venezuelan bankruptcy law in October of that year.

In September 1996, Transamerica sued the Underwriters in Florida state
court, alleging that the 1993 and 1994 policies ("together, the Policy") cover
Transamerica's claim for damages resulting from the lost equipment. The
Underwriters removed the case to federal district court under diversity jurisdiction.
In May 1998, the district court granted partial summary judgment to Transamerica,
holding that Transamerica is entitled to recover under the Policy. First, the district
court held that Transamerica is an additional assured under the Policy. Second, the
court rejected the Underwriters' argument that alleged CAVN misrepresentations
voided the Policy, thereby preventing Transamerica from recovering. Instead, the
court held that the Policy was severable, so that even if CAVN failed to disclose

material facts when renewing the Policy, the Policy continued to provide coverage for Transamerica. Third, under the burden shifting test enunciated in New Hampshire v. Martech USA, Inc., 993 F.2d 1195 (5th Cir. 1993), the court held that the Underwriters failed to show that the loss of equipment occurred outside the Policy period. Finally, the court found a genuine issue of material fact regarding the issue of damages, so a jury trial on the damages issue ensued.

Before trial, Transamerica filed a motion in limine seeking to preclude the Underwriters from producing any evidence at trial relating to defenses not raised in the Underwriters' December 5, 1995 declinature letter. The district court granted Transamerica's motion. The damages trial resulted in an award of $3,958,981.94 to Transamerica. The Underwriters appeal.

## II.

We review the district court's grant of summary judgment de novo. Mitchell v. USBI Co., 186 F.3d 1352, 1354 (11th Cir. 1999). A district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2001). Thus, a court may grant summary judgment only if, viewing the evidence in the light most favorable

to the non-moving party, there is no genuine issue of material fact. Crawford v. Babbitt, 186 F.3d 1322, 1325 (11th Cir. 1999). As the Policy dictates, we apply English law.

**A.   Is Transamerica an Additional Assured, a Loss Payee, or Both?**

The initial issue is whether Transamerica is an additional assured, a loss payee, or both an additional assured and a loss payee under the Policy. As the district court explained:

> A coinsured party under an insurance policy has all the rights afforded to the named assured and can recover under the policy under its own right. On the other hand, a loss payee is merely a party designated to receive payment should the named insured prevail on its claim. In other words, a loss payee can only recover to the extent the named insured can recover.

See also Couch on Insurance § 65:22 (3d ed. 1996) ("Loss payee's rights under insurance policy are derivative of named insured's rights; when named insured has no right to recover, loss payee cannot recover under policy."). The district court held that Transamerica is both an assured and a loss payee under the Policy and, therefore, can recover damages under its own right.

The Policy lists the assured as "C.A. Venezolana de Navigacion and/or *Leasing Companies* as Owners and producers of equipment and/or subsidiary and/or affiliated companies." (emphasis added). This language seemingly requires us to find that Transamerica, a leasing company, is an assured.

7

However, the Underwriters point to an addendum to the Policy that states: "It is hereby noted and agreed to accept the following as ~~additional assureds~~/loss payees as their respective interests may appear; . . . Transamerica Leasing, Incorporated." The Underwriters argue that the addendum's specific reference to Transamerica takes precedence over any general Policy terminology to the contrary. See Macgillivray on Insurance Law 277 (9th ed. 1997) (stating that "clauses of specific application may contradict clauses of general application which, if they stood alone, would control the specific subject matter, and the clause of specific application then controls").

Viewing the evidence and factual inferences in the light most favorable to the Underwriters, we hold that the addendum creates an issue of fact necessitating a jury trial. Transamerica disputes the authenticity of the addendum and suggests that one of the Underwriters crossed out "additional assureds." Although Transamerica is free to raise these points before a jury, this court will not decide such issues of fact while reviewing a grant of summary judgment. See Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) ("A trial court must not decide any factual issues it finds in the records; if factual issues are present, the court must deny the motion and proceed to trial.").

**B.    Did CAVN's Alleged Failure to Disclose Material Facts to the Underwriters Void Transamerica's Coverage?**

The Underwriters next find fault with the district court's determination that CAVN's alleged failure to disclose material information when renewing the Policy does not void Transamerica's coverage.[1] The district court based this determination on its conclusion that Transamerica is an additional assured. Therefore, the district court reasoned, Transamerica is not relegated to recovering only to the extent that CAVN can recover. The district court then examined whether the Policy is severable so that even if CAVN's alleged non-disclosure voids its own coverage, Transamerica still may recover. The court, relying on English law providing that an insurance policy can be voided only as to the assured making the non-disclosure, held that the Policy is severable. See New Hampshire Ins. Co. v. MGN, Ltd., [1996] CLC 1692.

The doctrine of uberrimae fidei applies to this maritime case. This doctrine "requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." HIH Marine Servs., Inc. v. Fraser, 211 F.3d 1359, 1362 (11th Cir. 2000); accord Godfrey v. Britannic Assurance Co.

---

[1]The Underwriters argue on appeal that Transamerica failed to disclose material information concerning the loss of the leased equipment. However, the Underwriters failed to raise this argument in response to Transamerica's motion for summary judgment. Therefore, the Underwriters have waived any argument that Transamerica's purported failure to disclose material information requires voidance of the policy. See Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc., 762 F.2d 557, 561 (7th Cir. 1985).

9

Ltd., [1963] 2 Lloyd's Rep. 515, 528-30. "A misrepresentation is material if 'it might have a bearing on the risk to be assumed by the insurer.'" HIH Marine Servs., Inc., 211 F.3d at 1363; accord St. Paul Fire & Marine Ins. Co. v. McConnell Dowell Constructors Ltd., [1995] 2 Lloyd's Rep. 116, 121-25.

The Underwriters' claim that CAVN failed to disclose material facts rests on the following. In July 1994, CAVN told Transamerica that it had lost track of at least 500 units of leased equipment. Transamerica then began to search for its equipment. In August 1994, immediately prior to "binding" coverage for the 1994 policy, Transamerica's brokers told the Underwriters that there were "no known or reported losses." In October 1994, CAVN informed Transamerica that the missing containers were lost and could not be returned. On November 10, 1994, Transamerica informed the Underwriters of the loss.

Because the district court held that Transamerica is an additional assured and the Policy is severable as to Transamerica, the court did not analyze whether CAVN's alleged non-disclosure requires the court to void the policy altogether. We already have determined that an issue of fact exists concerning Transamerica's status as an assured or a loss payee under the Policy. If the jury finds that Transamerica is an additional assured, or both an additional assured and a loss payee, then the district court correctly concluded that CAVN's actions do not affect

10

Transamerica's coverage. On the other hand, if the jury finds that Transamerica is merely a loss payee, then the jury must decide whether CAVN failed to disclose to the Underwriters "all facts material to a calculation of the insurance risk," thereby negating Transamerica's coverage. HIH Marine Servs., Inc., 211 F.3d at 1362.[2]

**C. Can the Underwriters Rely on the "Insolvency or Financial Default" Exclusion?**

The Underwriters argue that the district court erred by ruling that they waived reliance on coverage defenses not raised in their declinature letter. The declinature letter stated:

> Due to the volume of claims intimated against C.A.V.N. under the above policies, the age of several of the claims and the total lack of assistance insurers have received from C.A.V.N. in identifying the number of claims lodged with them, insurers hereby formally decline cover in respect of any claims of whatsoever nature that may fall for their consideration under any of the policies referred to above.

> Insurers hereby repudiate cover under the above policies due to late notification and failure by CAVN to disclose material facts to underwriters at each and every renewal subsequent to bankruptcy proceedings in the Venezuelan Supreme Court.

Specifically, the Underwriters seek to rely on a Policy exclusion that precludes coverage for losses "arising from insolvency or financial default," despite their failure to cite this exclusion in the declinature letter.

---

[2]Should the jury find that Transamerica is merely a loss payee, then the district court may decide that there is no genuine issue of material fact concerning whether CAVN violated the doctrine of uberrimae fidei, thereby permitting a decision as a matter of law.

11

English law does not require insurers to specify all grounds for denial of coverage in a declinature letter. See Macgillivray on Insurance Law 475-76 (stating that "no party is required to name all his reasons at once or any reason at all in the assignment of one reason, for a refusal to pay cannot be a waiver of any other existing reason"). Moreover, an insurer cannot waive a policy exclusion where coverage otherwise would not exist. Pentagon Constr. (1969) Co. v. USF&G Co., [1978] 1 Lloyd's Rep. 93, 104 (B.C. Ct. App. 1977); accord Reliance Ins. Co. v. The Yacht Escapade, 280 F.2d 482, 487 (5th Cir. 1960). These principles are well-founded, for it often is the case that an insurer will not be aware of all possible defenses at the time it writes a declinature letter. Therefore, we conclude that the district court erred in ruling that the Underwriters waived reliance on Policy exclusions not raised in the declinature letter.

Alternatively, the district court held that the Policy is severable between Transamerica and CAVN with respect to the "insolvency or financial default" exclusion, so that CAVN's insolvency can preclude only CAVN from recovering. We respectfully disagree with the district court's holding. The "insolvency or financial default" exclusion applies, by its terms, to all parties subject to the Policy; it thus applies to bar coverage for any loss due to insolvency or financial default, regardless of which party makes the claim.

Transamerica does not defend the district court's severability analysis. Instead, Transamerica asks us to affirm the district court due to the Underwriters' alleged failure to produce sufficient evidence that CAVN's insolvency caused the loss of equipment. We decline this invitation.

We think that a jury reasonably could find a causal connection between CAVN's bankruptcy and the disappearance of the leased equipment. In July 1994, CAVN informed Transamerica that it had lost track of at least 500 pieces of Transamerica equipment. Also in July 1994, CAVN ceased doing business. About three months later, CAVN filed for protection under Venezuelan bankruptcy law. We think that a reasonable jury could conclude that CAVN's insolvency led to the disappearance of Transamerica's equipment. Thus, a genuine issue of material fact exists concerning whether the "insolvency or financial default" exclusion applies to bar recovery by Transamerica, requiring a jury trial.[3]

**D.      Did the Loss Occur During the Policy Period?**

---

[3]At oral argument, Transamerica argued that it could not have been CAVN's insolvency that caused the disappearance of the leased equipment. Insolvency, the argument goes, does not cause equipment to disappear. Instead, Transamerica suggests that the equipment must have been stolen. We think Transamerica's suggestion eminently reasonable. That being said, we do not believe that insolvency must directly cause a loss for the insolvency exclusion to apply; were that the case, we would be hard pressed to imagine any situation where the exclusion would apply. We instead think that the exclusion applies if a jury concludes that CAVN's insolvency resulted in the abandonment of Transamerica's equipment, which eventually led to its misappropriation.

13

The Underwriters contend that the district court erred in ruling that Transamerica's loss occurred within the Policy period.[4] The district court, applying the burden shifting test enunciated in New Hampshire v. Martech USA, Inc., 993 F.2d 1195 (5th Cir. 1993), held that the Underwriters failed to show that the loss of equipment occurred outside the Policy period. Under Martech, the insured first must show that the loss occurred during the policy period. Id. at 1200. If the insured succeeds in showing that the loss occurred within the policy period, then the burden shifts to the insurer to prove that a policy exclusion excepts the loss from coverage. Id.

In Banco Nacional de Nicaragua v. Argonaut Insurance Co., 681 F.2d 1337 (11th Cir. 1982), this court examined a case involving the shipment of urea from Romania to Nicaragua. Id. at 1338-39. The owner of the urea sued the cargo's insurer, Argonaut Insurance Company, alleging that the urea was lost or damaged on the voyage. Id. at 1339. We rejected the insured's argument that Argonaut had the burden to prove that the loss occurred outside the policy period as an exception to coverage, holding that the plaintiff in a suit under an all risk insurance policy must show

> proof that the loss occurred within the policy period. . . . Rather than

---

[4]The parties rely exclusively on American law in arguing this issue.

being an exception to coverage, as an inherent vice or defect would be, proof that a loss occurred within the policy period is a predicate to the application of the policy. Thus, as Morrison indicates, the burden of proving that the loss occurred during the policy period is properly on the insured. . . . Our holding should not be read as requiring an insured to prove . . . the precise time during the policy period at which the loss occurred. We hold only that the insured must show that a loss did occur at some time within the policy period, and that the jury may not engage in speculation in concluding that a loss occurred within that period.

Id. at 1340 & n.5 (citing Morrison Grain Co. v. Utica Mut. Ins. Co., 632 F.2d 424, 430 (5th Cir. 1980) (holding that the insured satisfied its burden of proving a loss by showing that the cargo of urea was in good condition when the voyage began and in damaged condition when unloaded from the vessel)).

In Martech, the Fifth Circuit examined an insurance policy that provided coverage for damages to the insured's underwater diving equipment. 993 F.2d at 1197. The court rejected the insured's contention that it satisfied its burden by showing that its losses "more likely than not" occurred within the policy period. Id. at 1200. The court concluded that the insured's evidence did not preclude the damage to the goods occurring before or after the policy period, noting: "Proof that the claimed losses occurred during the policy period is an essential element of Martech's coverage claim on which it bears the burden of proof. Unconfirmed rumors of loss are insufficient to satisfy that burden." Id. The court distinguished Morrison Grain by stating: "Because the policy covered a discrete shipment of

15

goods the questions regarding the time of loss are different from those presented in the instant case." Id. at 1199 n.18.

To satisfy its burden of producing evidence showing that its loss occurred during the Policy period, Transamerica produced a May 1993 inventory of equipment on lease to CAVN. Transamerica then notes that (1) in July 1994, CAVN informed Transamerica that it had lost track of at least 500 pieces of equipment and (2) in October 1994, CAVN notified Transamerica that the equipment had disappeared mysteriously and would not be returned.

We hold that the district court erred in holding, as a matter of law, that the equipment disappeared during the Policy period. First, at least some of the loss could have occurred before the Policy period. The Underwriters point out that Transamerica's May 1993 inventory was just a list of equipment on lease to CAVN, many units of which had been on lease since the 1980s. In other words, the inventory does not necessarily show that all the equipment listed was still in CAVN's possession at the beginning of the Policy period. Moreover, although CAVN informed Transamerica that it had lost track of at least 500 units of equipment in June 1994, this does not necessarily mean that the loss occurred within the Policy period. Second, at least some of the loss could have occurred after the Policy period. On November 10, 1994, nine days after cancellation of the

16

Policy, Transamerica gave notice of a claim for physical damage and loss of 944 containers that had been on hire to CAVN. It is conceivable that some of this loss occurred after the Policy terminated.

Moreover, this case is unlike Banco Nacional or Morrison Grain, which both involved a product sent in good condition but arriving at its destination damaged or lost. In those cases, it is obvious that the loss occurred sometime during the voyages. See Martech, 993 F.2d at 1199 n.18 ("Because the policy [in Morrison Grain] covered a discrete shipment of goods the questions regarding the time of loss are different from those presented in the instant case."). In this case, as in Martech, the equipment at issue was used before the Policy became effective, so there is a question of fact concerning when the loss occurred. Therefore, we reverse the district court and remand for trial to determine whether the loss occurred within the Policy period.[5]

### III.

We REVERSE the district court and REMAND for trial. In summary, the jury must determine whether Transamerica is an additional assured, a loss payee, or both. If the jury finds that Transamerica is an additional assured, or both an additional assured and a loss payee, then CAVN's alleged non-disclosure does not

---

[5]Due to our resolution of the issues on appeal, we also reverse the jury damages award.

17

affect Transamerica's coverage because the Policy is severable. If, on the other hand, the jury finds that CAVN is merely a loss payee, then the jury must decide whether CAVN's alleged non-disclosure violates the doctrine of uberrimae fidei. Regardless of the finding as to Transamerica's status as an additional assured or a loss payee, the jury also must determine whether Transamerica's loss occurred due to CAVN's insolvency or financial default and whether the loss occurred within the Policy period.