**TRANSAMERICA LEASING, INC., Plaintiff,**

v.

**The INSTITUTE OF LONDON UNDERWRITERS, et al., Defendants.**

**No. 96–2712–CIV–MOORE.**

United States District Court, S.D. Florida.

Sept. 17, 2004.

Philip A. Allen, III, Esq., Garbett Bronstein Stiphany & Allen, Miami, Kieron F. Quinn, Esq., Martin E. Wolf, Esq., Quinn Gordon & Wolf, Baltimore, MD, for Plaintiff.

Joseph Hagedorn Lang, Jr., Esq., Sylvia H. Walbolt, Esq., Carlton Fields Ward Emmanuel Smith & Cutler, St. Petersburg, Gary Pappas, Esq., Carlton Fields, Miami, for Defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Underwriters' Motion for Directed Verdict/Judgment as a Matter of Law After Entry of Judgment (DE # 394) ("Motion for Directed Verdict").

UPON CONSIDERATION of the Motion, responses, numerous affidavits and supplements, and all other pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

Plaintiff Transamerica Leasing, Inc. ("Transamerica") brought this action against several insurance underwriters ("Underwriters") alleging that Underwriters have failed to satisfy a claim filed by Transamerica under certain insurance polices issued by Underwriters to C.A. Venezolana de Navigacion ("CAVN"), a Venezuelan flag shipping line with headquarters in Miami, Florida. For a full recitation of the facts of this case, *see Transamerica Leasing, Inc. v. Institute of London Underwriters*, 7 F.Supp.2d 1340 (S.D.Fla.1998). To summarize the important facts, Transamerica is a lessor of ocean cargo containers and other related equipment who entered into various lease agreements with CAVN. In turn, CAVN acquired all risk insurance from Underwriters. Sometime in July 1994, CAVN informed Transamerica that it had lost track of several hundred pieces of Transamerica's equipment. Transamerica searched for and recovered some equipment, but could not locate many units. In October 1994, CAVN informed Transamerica that the units were either lost or damaged and would not be returned. Subsequently, CAVN entered into bankruptcy proceedings in Venezuela. In Sep-

tember 1996, Transamerica filed this suit against Underwriters in Florida state court, seeking to recover the full amount of a claim made by Transamerica for the physical damage and loss of Transamerica's containers. Underwriters removed the case to federal district court on the basis of diversity jurisdiction, and admiralty and maritime jurisdiction. *See* 28 U.S.C. §§ 1332 and 1333.

On May 6, 1998, this Court entered an order granting partial summary judgment as to coverage and liability in favor of Transamerica. Thereafter, in May 1999, the damage portion of the case was tried to a jury. The jury awarded Transamerica $3,958,981.94 in damages. On appeal, the Eleventh Circuit reversed the summary judgment and the jury's damages award, and remanded the case for trial. *See Transamerica Leasing, Inc. v. Institute of London Underwriters*, 267 F.3d 1303 (11th Cir.2001). The Court of Appeals determined that there was an issue of fact as to whether, under the 1993 and 1994 policies (collectively, the "Policy"), Transamerica is an additional assured, a loss payee, or both. *Id.* at 1307–08. Because courts must not decide factual issues found in the record when ruling on motions for summary judgment, the Eleventh Circuit directed that Transamerica's status under the Policy, a factual issue, necessitated a jury trial. Specifically, the Eleventh Circuit mandate directed that:

> [T]he jury must determine whether Transamerica is an additional assured, a loss payee, or both. If the jury finds that Transamerica is an additional assured, or both an additional assured and a loss payee then CAVN's alleged nondisclosure does not affect Transamerica's coverage because the Policy is severable. If, on the other hand, the jury finds that [Transamerica][1] is mere-

---

[1]. Clearly the Eleventh Circuit meant Transamerica here, not CAVN.

ly a loss payee, then the jury must decide whether CAVN's alleged non-disclosure violates the doctrine of uberrimae fidei. Regardless of the finding as to Transamerica's status as an additional assured or a loss payee, the jury must also determine whether Transamerica's loss occurred due to CAVN's insolvency or financial default and whether the loss occurred within the Policy period.

*Id.* at 1312.

The post-remand trial of this case commenced on October 21, 2002. At the close of Transamerica's case, Underwriters filed a motion for directed verdict/judgment as a matter of law, which was denied by this Court. At the close of their own case, Underwriters again moved for a directed verdict/judgment as a matter of law. The motion was again denied by this Court. Finally, at the close of evidence, the Underwriters renewed their motion for a directed verdict/judgment as a matter of law. This third motion was also denied by this Court.

The jury returned a verdict on October 29, 2002. *See* Liability Verdict (DE # 382). The jury found that: (1) Transamerica was only a loss payee; (2) CAVN failed to disclose to Underwriters facts that would have been material to calculating the insurance risk; (3) Underwriters knew such facts from sources other than CAVN, or had information which should have caused them to make further inquiries about CAVN's financial condition, yet chose to underwrite the insurance anyway; (4) CAVN did not engage in willful misconduct which contributed to the equipment claimed lost or damaged by Transamerica; (5) no pieces of Transamerica's equipment were lost during the 1993 policy period, 935 pieces were lost during the 1994 policy period; and (6) 468 of the 935 pieces of equipment lost during the policy period were lost as a result of CAVN's insolvency or financial default. *See id.*

As to damages, the jury found that Transamerica could recover for 467 pieces lost during the 1994 policy period (those which were not lost as a result of CAVN's insolvency or financial default). The jury determined that these pieces had a fair market value of $537,050. The jury also found that Transamerica lost $246,176 as a result of expenditures to recover and safeguard its equipment (sue and labor expenses), and that a fifteen percent prejudgment interest rate should be awarded to Transamerica on account of the damages that had been suffered. *See id.* On October 30, 2002, pursuant to the jury's verdict, this Court entered an Order of Final Judgment against Underwriters in favor of Transamerica. *See* Final Judgment (DE # 392). Underwriters were ordered to pay to Transamerica a total amount of $783,226 ($537,050 for lost equipment and $246,176 for sue labor and expenses), plus simple pre-judgment interest at a rate of fifteen percent. *See id.*

Following the jury's verdict, pursuant to Rule 50(b), the Underwriters renewed their motion for a judgment as a matter of law. Fed.R.Civ.P. 50(b). This renewed motion is now before the Court. In their motion, Underwriters contend that: (1) loss payees have no standing to sue under the Policy; (2) loss payees cannot recover sue and labor under the Policy; (3) Transamerica failed to prove a date of loss; (4) Transamerica failed to prove a cause of loss; and (5) under English law and practice, prejudgment interest is set by the court. *See* Mot. for Directed Verdict.

## DISCUSSION

### I. Legal Standard for Rule 50(b) Motions

Underwriters' Motion for Directed Verdict is governed by Federal Rule of Civil Procedure 50(b), which provides, in relevant part:

If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment...

When reviewing a Rule 50(b) motion, this Court must consider the evidence presented at trial, drawing all factual inferences and resolving all credibility determinations in favor of the nonmoving party. *Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1344 (11th Cir.2000) (citing *Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969)(en banc)).[2] "Judgment as a matter of law is appropriate only if the evidence is so overwhelming in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1241, 1246 (11th Cir.2001) (citing *Slicker v. Jackson,* 215 F.3d 1225, 1229 (11th Cir. 2000)).

Here, the Court did not grant Underwriters' motion for a judgment as a matter of law at the close of all evidence, but instead "submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." *See* Fed.R.Civ.P. 50(b). Had the jury determined that Transamerica was an additional assured, or both an additional assured and a loss payee, the issue of whether a loss payee has standing to sue under the Policy raised in the Underwriters' pre-verdict motion for directed verdict would have been moot. However, because the jury decided that Transamerica is only a loss payee, the legal arguments presented by

Underwriters are now ripe for adjudication, and this Court must decide the issue of a loss payee's standing to sue under the Policy.

## II. Eleventh Circuit Mandate

According to the Eleventh Circuit's mandate, this Court was directed to submit the following questions to the jury: (1) whether Transamerica is an additional assured, a loss payee, or both; (2) if Transamerica is merely a loss payee, did CAVN's alleged non-disclosure violate the doctrine of uberrimae fidei; (3) regardless of the finding as to Transamerica's status as an additional assured or a loss payee, whether Transamerica's loss is due to CAVN's insolvency or financial default; and (4) did the loss occur within the Policy period. *Transamerica,* 267 F.3d at 1312.

In the summary judgment pleadings, Underwriters argued that an addendum to the Policy made specific reference to Transamerica as a loss payee, taking precedence over any general Policy terminology to the contrary. *Id.* at 1308. Transamerica disputed the authenticity of the addendum, and suggested that Underwriters had crossed out "additional assureds." This Court determined that Transamerica was an additional assured, but the Eleventh Circuit reversed, explaining that while the language of the Policy seemed to indicate that Transamerica was an additional assured, the addendum to the Policy created an issue of fact necessitating a jury trial. *Id.* at 1307–08.

Although the Circuit Court concluded that Transamerica's status under the Policy was a question of fact for the jury to decide, as explained *infra,* the Eleventh Circuit did not consider or decide the legal

---

**2.** Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *See Bonner v.* *City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

question of whether a loss payee has standing to bring a claim under the Policy.

## III. Did Underwriters Waive the Standing Defense?

Transamerica claims that Underwriters have waived the standing defense because they did not allege, in either their answer to the amended complaint or any other pleading, that Transamerica, as a "loss payee" under the Policy, lacks standing to pursue its claim for relief. Resp. at 2–5. According to Transamerica, the standing issue Underwriters raised in their Motion for Directed Verdict is waived because it is an affirmative defense which must be asserted in the answer, *Id.* at 12.

■ It is clear from the Underwriters' Answer to the Amended Complaint that Underwriters have not waived their lack of standing defense. *See* Answer to Amended Complaint. First, Underwriters deny the allegations made by Transamerica in paragraph 10 of the Amended Complaint: "Transamerica, as a named insured and loss payee, is a beneficiary entitled to make a claim and receive payment from the Underwriters pursuant to the Policy for Leased Equipment not returned to Transamerica, for damage to Leased Equipment, and for related sue and labor charges arising from Transamerica's efforts to recover the Leased Equipment before it was lost, damaged, or destroyed." Answer at 5. Second, Underwriters state, among their defenses, that "[b]y the terms of the policies of insurance which Underwriters issued to C.A.V.N., Underwriters are not liable on such policies except and until a loss is sustained and actually paid in money by the insured in satisfaction of a final judgment and/or compromise, *and only the insured can bring an action against an insurer to recover any loss.*" *Id.* at 8 (emphasis added). Underwriters

clearly asserted this defense in the Answer to the Amended Complaint.

In addition to raising the lack of standing defense in their Answer, Underwriters raised this defense in their Memorandum in Support of Motion for Summary Judgment and Opposition. While acknowledging that Underwriters argued in their summary judgment papers that Transamerica was only a loss payee and thus could not bring suit, Transamerica contends that Underwriters did this solely in connection with two unrelated arguments. Resp. at 4. In the summary judgment pleadings, Underwriters argued that "[i]n English law, the contract of insurance may stipulate that the insurance money shall be paid to a third party, a party other than the original insured, known as a 'loss payee'," but it is "a long established principle in English law that any such stipulation may be enforced by the insured ... but not the third party loss payee." Mem. in Supp. of Mot. for Summ. J. and Opp'n at 15 (citing *Guerin v. Manchester Fire Assurance Co.*, (1898) 29 SCR 139, 149 per Strong CJ). Further, Underwriters stated that "the loss payee is therefore without a cause of action and has no *locus standi* against the insurer whether to claim for payment under the insurance policy generally, or to enforce any such particular term." [3] *Id.* These arguments are not unrelated to the issue of a loss payee's standing to sue under the policy, but instead, clearly state Underwriters' position on the issue.

The issue of standing was also raised in Underwriters' initial motion for directed verdict at the close of Transamerica's case, and in each subsequent motion for directed verdict filed by Underwriters. Further, Underwriters raised this issue in their objections to Transamerica's proposed jury

---

**3.** *Locus standi* is defined as "[t]he right to bring an action or to be heard in a given forum." Black's Law Dictionary (17th edition).

instructions. *See* Underwriters' Written Objections to Transamerica's Proposed Jury Instructions at 4. Underwriters objected to a proposed instruction which cited the *Transamerica* opinion by the Eleventh Circuit, but did not accurately "track the description adopted from this Court of the difference between loss payees and additional assureds." [4] Written Objections at 4. Underwriters objected to the proposed instruction because "[i]t also failed to track the description included by the Eleventh Circuit from *Couch on Insurance.*" [5] *Id.*

Underwriters raised the lack of standing defense many times throughout this litigation. Thus, this Court rejects Transamerica's contention that the defense has been waived.

## IV. Does the Law of the Case Doctrine Preclude this Court from Ruling on Loss Payee's Standing to Bring Claim?

■ In addition to their claim that Underwriters waived their lack of standing defense based on their failure to raise the issue in the pre-mandate pleadings, Transamerica claims that because Underwriters did not raise the lack of standing defense in their appeal to the Eleventh Circuit, the only issues preserved for trial were those that fell within the Eleventh Circuit's mandate. Resp. at 5–6. Because Underwrit-

ers failed to either plead or preserve the standing defense any time prior to the issuance of that mandate, argues Transamerica, Underwriters are absolutely precluded from introducing the defense in the post-remand phase of this action.[6] *Id.* at 9. Further, Transamerica asserts that the Eleventh Circuit's mandate constitutes the law of the case, and precludes this Court from deciding whether a loss payee has standing under the Policy, because the issue was necessarily decided by the Eleventh Circuit. Thus, before addressing the merits of Underwriters' contention that Transamerica, as a loss payee, is barred from bringing a claim under the Policy, this Court must determine if it is precluded from deciding this issue based on the law of the case law doctrine.

"Under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate decision in the same case." *Alphamed, Inc. v. B. Braun Medical, Inc.,* 367 F.3d 1280, 1285–86 (11th Cir.2004); *Venn v. St. Paul Fire & Marine Ins. Co.,* 99 F.3d 1058, 1063 (11th Cir.1996). The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided. *Murphy v. FDIC,* 208 F.3d 959, 966 (11th Cir.2000) (citations omitted). The law of the case doctrine bars reconsideration of an issue that was actually, or by necessary

---

4. In *Transamerica v. Institute of London Underwriters,* this Court explained the difference between an additional assured and a loss payee:

> A coinsured party under an insurance policy has all the rights afforded to a named assured and can recover under the policy under its own right. On the other hand, a loss payee is merely a party designated to receive payment should the named insured prevail on its claim. In other words, a loss payee can only recover to the extent the named insured can recover.

7 F.Supp.2d 1340, 1345 (S.D.Fla.1998). The Eleventh Circuit quoted this Court's explana-

tion in its *Transamerica* opinion. *See* 267 F.3d 1303, 1307 (11th Cir.2001).

5. The Eleventh Circuit described a loss payees rights under an insurance policy: "[l]oss payee's rights under insurance policy are derivative of named insured's rights; when named insured has no right to recover, loss payee cannot recover under the policy." *Transamerica,* 267 F.3d at 1307 (quoting *Couch on Insurance* § 65:22 (3d ed.1996)).

6. As explained *supra,* Underwriters did raise this defense prior to the issuance of the Eleventh Circuit's mandate.

implication, decided. *Alphamed,* 367 F.3d at 1286. "[A] mandate is completely controlling as to all matters within its compass, *but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.*" *Gulf Coast Building & Supply Co. v. Int'l Brotherhood of Electrical Workers,* 460 F.2d 105, 109 (5th Cir.1972) (emphasis added); *see also Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1288 (11th Cir. 2000). A district court must follow appellate mandates and not assert jurisdiction over matters outside the scope of a limited mandate.

The issue of whether a loss payee has standing to sue under the Policy was neither expressly nor impliedly disposed of on appeal. Of course, the Eleventh Circuit necessarily decided that Transamerica has Article III standing to sue. However, the Eleventh Circuit did not decide the issue of a loss payee's standing under the Policy, as the status of Transamerica under the Policy remained undetermined. The Eleventh Circuit's decision reviewed the issue of this Court's grant of partial summary judgment as to liability, and, expressing no opinion on the outcome, remanded the case for a jury trial to decide the factual issue of Transamerica's status under the Policy. Therefore, the Eleventh Circuit's analysis never determined whether, under English law, a loss payee can sue under the Policy. Although the mandate suggested that the jury's analysis should continue if Transamerica was found to be only a loss payee, this does not equate to an implied determination of the issue of standing. Here, this Court is not revisiting the jury's determination that Transamerica is a loss payee, but rather, deciding for the first time the legal issue of whether Transamerica, as a loss payee, has standing to sue under the Policy.

Transamerica argues that the Eleventh Circuit mandate established the law of the case. Specifically, Transamerica argues that because of the way the Eleventh Circuit constructed the mandate, it is clear that it considered and decided that a loss payee would have standing to sue under the Policy. However, in ruling on the initial summary judgment motions, this Court determined that Transamerica was an additional assured. Therefore, this Court did not consider whether a loss payee would have standing to sue under the Policy. As conceded by Transamerica, Underwriters did not bring the issue before the Court of Appeals. Resp. at 12. Thus, on appeal, the issue of whether a loss payee has standing to sue under the Policy was not included in the Eleventh Circuit order reversing and remanding this Court's order granting partial summary judgment. Therefore, the Eleventh Circuit mandate is not the law of the case as to that issue.

## V. Can a Loss Payee Sue under the Policy?

Underwriters have neither waived their right, nor are they precluded by the Eleventh Circuit's decision in *Transamerica,* from raising the lack of standing defense before this Court. Therefore, this Court must decide for the first time whether, under English law, a loss payee can sue under the Policy.

Underwriters argue that Transamerica, as a loss payee, has no standing to sue under the Policy. Mot. for Directed Verdict at 4. According to Underwriters, "English law is clear that a loss payee does not have standing to sue under a contract of insurance, absent proof of timely assignment by the assured or proof of another applicable exception to the broad and long-standing general rule." *Id.*

Transamerica does not directly dispute Underwriters argument that, absent a valid assignment, a loss payee cannot sue

under the Policy.[7] Instead, Transamerica asserts that it has the right to recover under the Policy because, "by operation of controlling English law, Transamerica became, and it is, the assignee of CAVN's insurance rights, by virtue of CAVN's liquidation in a Venezuelan bankruptcy proceeding." Resp. at 2. Underwriters maintain that there is no proof of an assignment under the Policy, and that Transamerica has neither argued nor proven that it has such an assignment of claim from CAVN. Mot. for Directed Verdict at 7.

■ Underwriters have provided sufficient authority for this Court to conclude that under English law, a loss payee does not have standing to sue under the Policy. First, a treatise citing English case law explains:

> Some policies direct that the insurance money shall be paid to a named third party, such as a creditor of the insured. Such a clause, known as a loss payable clause, 'gives no rights to the loss payee unless it also constitutes or evidences an assignment of the assured's rights under the policy or evidences the fact that the designated person is an original assured.'

Malcolm A. Clarke, The Law of Insurance Contracts § 5–1A (1997) (citing *The Angel Bell, Iraqi Ministry of Defense v. Arcepey Shipping Co., SA,* 2 Lloyd's Rep. 491, 497 (Q.B.1979); *Guerin v. Manchester Fire Assurance,* 29 S.C.R. 139, 149 (Can.1898)). Further, Clarke's treatise states:

> A simple form of loss payee clause, however, is not [ ] an assignment of the policy proceeds. Such a clause purports to benefit a third party, the loss payee, and is subject to the rule of privity against enforcement by the third par-

ty.... Moreover, the loss payee can be in no better position than the insured through whom he is, if at all, entitled to the insurance money.

*Id.* Clarke's treatise is in accord another English law treatise:

> It is very common for hull policies to include 'loss payee' clauses requiring payment to be made to, for instance, the mortgagees of the insured ship. The terminology of loss payee clauses (which are not standard) often falls short of assignment wording and amounts to no more than a 'direction to pay.' In these circumstances, it will probably not enable the 'loss payee' to sue in his own name under the policy....

Donald O'May, Julian Hill (ed. and co-author), Marine Insurance: Law and Policy 54 (Sweet & Maxwell, 1993 ed.).

Transamerica's own law expert, Edward Sibley, in a July 7, 1999 deposition in *Trans Ocean Container Corp. v. Yorkshire Ins. Co.,* No. 98–56 (S.D.Fla.), testified that under English law and practice, "[t]he loss payee is entitled to the benefit of the policy. He is entitled to be paid under the policy, but he can't sue on the policy." *See* Case No. 98–56, DE # 151, App. to Underwriters' Mem. Supp. Mot. for Summ. J., Ex. A1 (Sibley Dep. at 57). To counter this damaging statement by Sibley, Transamerica asserts that his deposition in *Trans Ocean* is not part of the record in this case, and that Sibley was addressing loss payee status in general, not where the insured was bankrupt. Resp. at 8–9.

First, Sibley's deposition is part of the record in this case. Transamerica filed the relevant portions of Sibley's deposition in December, 2002. *See* Plaintiff's Notice of Filing Decl. of Edward Sibley in Supp.

---

**7.** In their proposed jury instructions, Transamerica described an additional assured as having under the policy "all the rights of an original insured," while a loss payee "is only a party who can receive payment if the original insured recovers on a claim." Plaintiff's Notice of Filing Proposed Jury Instructions at 7.

of Resp. (DE # 416); Decl. of Edward Sibley (DE # 415). Second, although Sibley attempts to clarify his testimony in his Declaration by claiming he was not describing a situation where the insured was bankrupt, the *Trans Ocean* case involved the same bankrupt CAVN. Further, Sibley's Declaration affirms that his statements in his *Trans Ocean* deposition were correct under English law, but explains that had he been asked about a situation where the assured was adjudged bankrupt, he "would have stated the opinion that the loss payee could sue under the policy as a result of the transfer and vesting of rights as a matter of law under the Third Party (Rights Against Insurers) Act 1930." Sibley Decl. at 3. However, as explained *infra,* this Court has determined that the Third Party Act of 1930 does not apply in this case.

Underwriters English law expert, Christopher Dunn, supports the expert testimony of Transamerica's Sibley. Dunn stated that, "[Underwriters'] contention is that Transamerica [is a] loss payee[ ] as opposed to an assured. There seems to be little dispute that if [Underwriters'] contention is correct, then Transamerica ha[s] no title to sue and could in any event have no better rights than those available to CAVN." Dunn Aff. ¶ 7 (July 10, 1998).

Although this Court finds the treatises and expert law testimony compelling, it is English case law that this Court relies upon in concluding that a loss payee does not, absent an assignment, have standing to sue under the Policy. An English court has held that "a loss payable clause gives no rights to the loss payee unless it also constitutes or evidences an assignment of the assured's rights under the policy or evidences the fact that the designated person is an original assured." *Iraqi Ministry of Def.,* 2 Lloyd's Rep. at 497. Further, "[a]ccording to the rule of law established in England, a person not himself a party to a contract, but to whom money is made payable under a contract entered into by other persons, cannot maintain an action to recover the money so made payable to him." *Guerin,* 29 S.C.R. at 149. Although this Canadian case is not specifically addressing the rights of a loss payee, the basic rule of law is applicable here.

Transamerica has not presented, nor has this Court found, any English case where a loss payee, absent an assignment of rights by the assured, has been permitted to proceed against the insurers. Therefore, based on the foregoing, this Court concludes that absent an assignment, a loss payee cannot sue under the Policy at issue.

## VI. Is Transamerica an Assignee of CAVN's Insurance Rights?

As explained *supra,* Transamerica, as a loss payee, cannot sue under the Policy absent proof of a timely assignment by the assured, CAVN. Therefore, it is necessary for this Court to determine if CAVN's rights under the Policy were assigned to Transamerica.

While not conceding that Transamerica is only a loss payee, Transamerica argues that under the Third Parties (Rights Against Insurers) Act 1930 (the "Act"), "CAVN's right to file a claim and pursue this suit to enforce its rights against its insurers was 'transferred to and vested in' Transamerica as a third party to whom CAVN owed a liability for which it was insured." Resp. at 2, 7. The Act provides, in pertinent part:

1. Rights of third parties insurers on bankruptcy, etc, of the insured

   (1) Where under any contract of insurance a person (hereinafter referred to as the insured) is insured against liabilities which he may incur, then -

   (a) in the event of the insured becoming bankrupt or making a compo-

sition or arrangement with his creditors; or

(b) in the case of the insured being a company, in the event of a winding-up order [or an administration order] being made, or a resolution for a voluntary winding-up being passed, with respect to the company, . . .

if, either before or after that event, any such liability as aforesaid is incurred by the insured, his rights against the insurer under the contract in respect of the liability shall, notwithstanding anything in any Act or rule of law to the contrary, be transferred to and vest in the third party to whom the liability was so incurred.

Third Parties (Rights Against Insurers) Act 1930, 20 & 21 Geo 5 c 25.

Transamerica claims that the jury found that CAVN incurred liability to Transamerica prior to CAVN's liquidation, and that "[t]hese events caused CAVN's rights against its insurers to 'be transferred to and vest in' Transamerica as the 'third party to whom [CAVN's] liability was so incurred.'" Resp. at 8. According to Transamerica, the Act takes the place of the contractual assignment of insurance rights that the Underwriters contend Transamerica should have procured from CAVN. *Id.* Transamerica's law expert opined that "under English Law [ ] CAVN's rights under the subject policies transferred and vested in Transamerica, as a loss payee, by operation of law" Sibley Decl. at 1–2. Sibley explained his testimony in *Trans Ocean,* saying that if he had been asked about a situation where an assured was adjudged bankrupt, he "would have stated the opinion that the loss payee could sue under the policy as a result of the transfer and vesting of rights as a matter of law under the Third Party (Rights Against Insurers) Act 1930." *Id.* at 3–4.

Underwriters assert that the Act does not, as a matter of English law, effect an assignment of CAVN's rights to Transamerica. Reply at 1. Specifically, Underwriters argue that by its terms, the Act does not apply here, as "the portions of the policies (section 1) at issue in this case do[ ] not insure CAVN against third-party liability," but instead "insure[ ] CAVN's own interest in the equipment against property damage." *Id.* at 1–2. Under the terms and conditions of the Policy, "[n]o assignment of interest in this insurance or in any moneys which may be payable hereunder is to be binding on or recognised [sic] by the Underwriters unless a dated notice of such assignment or interest signed by [CAVN], and by the assignor in the case of subsequent agreement, is endorsed on the Policy and the Policy with such endorsement is produced before payment of any claim or return of premium thereunder." *See* Institute Container Clauses, clause 12 (incorporated into the Policy by reference).

While generally liability means "actually or *potentially* subject to an obligation. . . . an inchoate, future ascertained or imperfect obligation compared with a debt which is ascertained and certain," the prevailing English law establishes that it is not enough for a third party to have a claim against the insured; the third party must have established his claim in proceedings against the insured. Clarke, The Law of Insurance Contracts § 5–8C (citing *Post Office v. Norwich Union Fire Ins. Soc'y Ltd.,* 1 Lloyd's Rep. 216 (QB 1967)). Until *Post Office,* "loss in the context of liability insurance included the case of the insured who had incurred liability—although its existence and amount had yet to be formally or definitely established." *Id.* However, after *Post Office,* "the insured 'must prove a loss. [They] cannot recover anything under the main indemnity clause or make any claim against the underwriters

until they have been found liable and so sustained a loss.'" *Id.* (citations omitted; alteration in original).

To further support their assertion that Transamerica was not assigned CAVN's rights pursuant to the Act, Underwriters argue, consistent with *Post Office,* that "for a creditor to bring a claim under the Act, it is first necessary for the creditor to obtain Judgment against the assured and then proceed under the policy as if it were in the shoes of the original assured." Reply at 3; *see also* Dunn Decl. ¶ 3 (DE # 430). As Underwriters correctly point out, Transamerica has presented no evidence of a judgment against CAVN, or that CAVN made a claim under the policies at issue or assigned its rights to Transamerica. Reply at 3; *see also* Mot. for Directed Verdict at 2. In fact, no proceedings have ever been commenced against CAVN by Transamerica. Underwriters argue that because liability has not been "incurred by the insured," and the Act should not apply. Reply at 3.

■ Under the Policy at issue, for there to be a valid assignment, there must be a dated notice of assignment signed by the assured and endorsed on the Policy, and the endorsement must be produced. Here, there was no such dated notice signed by CAVN, nor did Transamerica produce an endorsed policy. Further, pursuant to *Post Office,* for Transamerica, as a creditor, to bring a claim under the Act, it must first obtain a judgment against CAVN, in which case it could proceed under the Policy against the Underwriters as if it were the original assured. Transamerica has not obtained a judgment against CAVN. Because there has been no contractual or statutory assignment, Transamerica has no standing to sue under the Policy.

## CONCLUSION

Having concluded that Transamerica, as a loss payee, lacks standing to bring a claim under the Policy, it is unnecessary for the Court to consider the remaining issues of whether a loss payee can recover sue and labor, whether Transamerica proved a date and cause of loss, or what the correct amount of prejudgment interest is. Based on the foregoing, it is

ORDERED AND ADJUDGED that Underwriters' Motion for Directed Verdict/Judgment as a Matter of Law After Entry of Judgment (DE # 394) is GRANTED. This Court's Final Judgment (DE # 392) awarding damages against Underwriters in favor of Transamerica is VACATED. It is further

ORDERED AND ADJUDGED that Plaintiff Transamerica's Motion to Correct Final Judgment (DE # 395) is DENIED AS MOOT.