[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 22, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15363

_____

D. C. Docket No. 96-02712-CV-KMM

TRANSAMERICA LEASING, INC.,

Plaintiff-Appellant,

versus

INSTITUTE OF LONDON UNDERWRITERS,
YORKSHIRE INSURANCE COMPANY, LTD "C" ACCOUNT,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 22, 2005)

Before HULL, MARCUS  and HILL, Circuit Judges.

MARCUS, Circuit Judge:

This appeal is before us for the second time.  The first time we reversed the

district court's entry of partial summary judgment in favor of Transamerica

Leasing, Inc. ("Transamerica"). On remand, and after a jury found in favor of the Plaintiff Transamerica, the district court entered judgment as a matter of law in favor of the defendant insurance underwriters (the "Underwriters"). After thorough review, we affirm.

**I**

The facts of this case have been extensively reported, and we assume the reader's familiarity with those decisions. See Transamerica Leasing, Inc. v. Inst. of London Underwriters, 267 F.3d 1303 (11th Cir. 2001) ("Transamerica I"); Transamerica Leasing, Inc. v. Inst. of London Underwriters, 338 F. Supp. 2d 1299 (S.D. Fla. 2004); Transamerica Leasing, Inc. v. Inst. of London Underwriters, 7 F. Supp. 2d 1340 (S.D. Fla. 1998). Most relevant to the current appeal are these facts. Transamerica is a lessor of ocean cargo containers and related equipment. In the early 1990s, Transamerica leased equipment to C.A. Venezolana de Navigacion ("CAVN"), a Venezuelan government shipping line. CAVN used the equipment, including containers, trailers, and chassis, to move cargo on routes around the world. CAVN was responsible for insuring the equipment, which it did by obtaining policies from Underwriters.

Sometime around July 1994, CAVN lost a substantial number of the items it had leased from Transamerica. CAVN filed for protection under Venezuelan bankruptcy law in October 1994, and much of the lost equipment was never found. Transamerica submitted insurance claims for the lost equipment in November 1994. Underwriters denied coverage, stating:

> Due to the volume of claims intimated against C.A.V.N. under the above policies, the age of several of the claims and the total lack of assistance insurers have received from C.A.V.N. in identifying the number of claims lodged with them, insurers hereby formally decline cover in respect of any claims of whatsoever nature that may fall for their consideration under any of the policies referred to above.

> Insurers hereby repudiate cover under the above policies due to late notification and failure by CAVN to disclose material facts to underwriters at each and every renewal subsequent to bankruptcy proceedings in the Venezuelan Supreme Court.

Underwriters refused to pay, and Transamerica initiated the suit giving rise to this appeal.

Plainly, there was some ambiguity as to Transamerica's status under the various insurance contracts. Transamerica took the position that it was an additional assured, while Underwriters argued that it was only a loss payee. The district court originally granted partial summary judgment on that issue, concluding that Transamerica was an assured.[1] Additionally, the district court

---

[1]This issue is important because the contracts contained a forum selection clause stating that they were to be interpreted according to "English law and practice" and under English law,

rejected the argument that the policies were voided by alleged misrepresentations made by CAVN. Instead, the district court found that the policies were severable, so that even if CAVN failed to disclose material facts when renewing, the policies continued to provide coverage for Transamerica.

A panel of this Court reversed the district court's order of summary judgment, holding that there were material questions of fact concerning Transamerica's status under the contracts that necessitated a jury trial. Specifically, we instructed the trial court in these terms:

> We REVERSE the district court and REMAND for trial. In summary, the jury must determine whether Transamerica is an additional assured, a loss payee, or both. If the jury finds that Transamerica is an additional assured, or both an additional assured and a loss payee, then CAVN's alleged non-disclosure does not affect Transamerica's coverage because the Policy is severable. If, on the other hand, the jury finds that [Transamerica][2] is merely a loss payee, then the jury must decide whether CAVN's alleged non-disclosure violates the doctrine of uberrimae fidei.

Transamerica, 267 F.3d at 1312. On remand, and after trial, a jury found that Transamerica was indeed a loss payee, and not an additional assured, and awarded damages in the amount of $783,226, plus interest.

---

an assured's rights under a contract are different from those of a loss payee.

[2]Obviously, the Court meant Transamerica here, not CAVN.

At trial, Underwriters moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 at the close of Transamerica's case, again at the close of its own case, and finally at the close of the evidence. Each of those motions were denied. Underwriters still again timely moved for judgment as a matter of law after the jury returned its verdict, arguing, among other things, that under English law, a loss payee does not have standing to sue on a contract. The district court agreed and granted Underwriters' motion.[3]

Transamerica timely appealed, arguing that 1) the district court was prohibited from considering the standing issue based on the law of the case doctrine and the mandate rule; 2) Underwriters waived the standing issue; 3) Underwriters should be judicially estopped from arguing that Transamerica cannot recover under the contract because it is a loss payee; and 4) the district court erred in excluding certain evidence.[4] We remain unpersuaded and consider each argument in turn.

---

[3]Because the district court found that Transamerica had no standing to sue under the contract, it did not consider the other arguments raised in Underwriters' motion for judgment as a matter of law, and those issues are not before us on appeal.

[4]In the "Statement of the Issues" portion of its brief, Transamerica also raises whether Underwriters waived any argument that Transamerica's procurement of a judgment against non-party CAVN was a condition precedent to an assignment of insurance rights to Transamerica by operation of England's Third Party (Rights Against Insurers) Act of 1930. There was no further discussion of this argument in the brief, and we deem it waived. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that issues not argued on appeal are deemed waived, and that a passing reference to an issue in a brief was insufficient to properly raise that issue).

**II**

We review de novo a district court's order granting a motion for judgment as a matter of law, applying the same standard as the district court. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004). We review application of the law of the case doctrine de novo. Alphamed, Inc. v. B. Braun Med., Inc., 367 F.3d 1280, 1285 (11th Cir. 2004). We review the district court's application of judicial estoppel for abuse of discretion, Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1271 (11th Cir. 2004), and examine the trial court's evidentiary rulings for abuse of discretion. Palmer v. Bd. of Regents of the Univ. Sys. of Ga., 208 F.3d 969, 973 (11th Cir. 2000).

Transamerica's main argument on appeal is that the district court was prohibited from considering the standing question because of the law of the case doctrine or the mandate rule. "Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." Heathcoat v. Potts, 905 F.2d 367, 370 (11th Cir. 1990) (internal quotation marks and citation omitted). "[W]hile the doctrine encompasses only those issues previously determined, the law is clear that it comprehends things *decided by necessary implication* as well as those decided explicitly." Wheeler v. City of

6

Pleasant Grove, 746 F.2d 1437, 1440 (11th Cir. 1984) (internal quotation marks and citations omitted). The doctrine's central purposes include bringing an end to litigation, protecting against the agitation of settled issues, and assuring that lower courts obey appellate orders. See United States v. Williams, 728 F.2d 1402, 1406 (11th Cir. 1984).

The mandate rule "is nothing more than a specific application of the 'law of the case' doctrine." Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir. 1985). This rule dictates that a trial court, "upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." Id. at 1119. "Although the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal, it is bound to follow the appellate court's holdings, both expressed and implied." Id. (citations omitted).

Transamerica argues that the district court was not free to address the question of whether, as a loss payee, it had standing to bring a claim under the policy. In Transamerica I, we instructed that the jury should decide whether CAVN's alleged non-disclosure violated the doctrine of uberrimae fidei (which requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk) if it first found that Transamerica

7

was a loss payee. 267 F.3d at 1312. According to Transamerica, our instructions necessarily reflected that we had decided that a loss payee could, in fact, maintain a claim. We disagree.

The law of the case doctrine applies <u>only</u> if our prior opinion determined, explicitly or by necessary implication, that a loss payee has standing to sue. First, we easily conclude that our prior decision never explicitly determined the issue. Underwriters did not raise the issue in their appellate briefs, and we did not consider it in our ruling. Second, it is similarly clear that the issue was not implicitly decided in <u>Transamerica I</u>. Standing to sue was not addressed in the district court order granting summary judgment, and neither party discussed it in its appellate brief. Indeed, had either party attempted to address standing in the prior appeal, we undoubtedly would have declined to reach the issue precisely because it was not addressed by the district court.

Transamerica nevertheless urges that we must have implicitly ruled upon standing in our prior opinion because the mandate in that case instructed the jury to determine Transamerica's status and, if its status was that of a loss payee, to then determine whether CAVN's alleged misrepresentations served to void the policy. Consideration whether CAVN's actions voided the contract would have been entirely unnecessary, Transamerica argues, if a loss payee had no standing to sue in

8

the first place. Thus, the argument goes, we must have implicitly decided that a loss payee has standing to bring a claim.

Quite simply, Transamerica's argument must fail because the issue of whether a loss payee has standing to sue under an insurance policy interpreted under the law of The United Kingdom was never before this Court during the prior appeal. Our case law could not be clearer that the law of the case doctrine cannot apply when the issue in question was outside the scope of the prior appeal. See Lawson v. Singletary, 85 F.3d 502, 512-13 (11th Cir. 1996) (noting that the law of the case doctrine did not apply, in part, because the issue at hand - - whether a particular prison regulation comported with a federal statute - - was not briefed or argued in the prior appeal, which concerned the appropriate standard of constitutional review); Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, 951 F.2d 1217, 1218 n.1 (11th Cir. 1992) (noting that the panel was not prohibited by the law of the case doctrine from dismissing a case based on lack of standing where the prior appellate panel had not considered the standing question), rev'd on other grounds, 508 U.S. 656, 113 S. Ct. 2297, 124 L. Ed. 2d. 586 (1993); Hester v. Int'l Union of Operating Eng'rs, 941 F.2d 1574, 1581 n.9 (11th Cir. 1991) (noting that an overly expansive interpretation of the law of the case doctrine would lead to a situation where a court of appeals would have

9

to consider many issues neither decided by the district court nor briefed to the appellate court, lest future panels be precluded from reaching those issues); Gaines v. Dougherty County Bd. of Educ., 775 F.2d 1565, 1568-69 (11th Cir. 1985) (noting that prior appellate decisions, which discussed only the merits of several desegregation plans, did not prevent the court from later addressing the district court's prior rulings regarding attorneys' fees); Conway v. Chem. Leaman Tank Lines, Inc., 644 F.2d 1059, 1062 (5th Cir. Unit A May 1981) (affirming the trial court's grant of a new trial on grounds that, at the time of prior appeals, had not yet been considered by the district court, and therefore were not ruled upon by prior appellate panels); see also Quern v. Jordan, 440 U.S. 332, 347 n.18, 99 S. Ct. 1139, 1148, 59 L. Ed. 2d 358 (1979) (noting that law of the case "comes into play only with respect to *issues* previously determined") (emphasis added)).

In fact, in those cases where we have found an implicit holding, the issue in question was considered in the prior appeal. See, e.g., Piambino, 757 F.2d at 1120-21 (holding that where a prior appellate panel had considered a particular party's intervention, and ordered that the party be allowed to intervene, it had "necessarily implied" that any procedural noncompliance with Federal Rule of Civil Procedure 24 (which governs intervention) was inconsequential); Wheeler, 746 F.2d at 1441 (holding that where a prior appellate panel had affirmed the district court's

10

findings as to liability, but had reversed as to damages and remanded for determination of the appropriate amount of damages, it had necessarily implied that damages were in fact appropriate). Because the issue of a loss payee's standing to sue was in no way a part of the first appeal, neither the law of the case doctrine nor the mandate rule prevented the district court from considering that question on remand.

Transamerica also contends that Underwriters waived the issue by not raising it during the first appeal. We disagree. As we note above, the question of a loss payee's standing was simply not a part of the first appeal because the district court did not consider the issue in its summary judgment order; indeed, had Underwriters attempted to raise the question on appeal, undoubtedly we would have declined to consider it precisely because it was not addressed by the district court. Moreover, this is not a case where we remanded for resolution of a narrow factual issue in a way that constrained the district court's consideration. See, e.g., Ellard v. Ala. Bd. of Pardons & Paroles, 928 F.2d 378, 381 (11th Cir. 1991) (reversing a district court for considering a factual argument outside the scope of the "four narrow factual issues" that had been remanded for resolution); Barber v. Int'l Bhd. of Boilermakers Dist. Lodge #57, 841 F.2d 1067, 1070-71 (11th Cir. 1988) (noting that when we remand for "resolution of a narrow factual issue, the

11

lower court may not circumvent the mandate by approaching the identical legal issue under an entirely new theory") (internal quotation marks and citation omitted).  Here, we did not remand for resolution of a narrow factual issue.  We remanded so that the district court could conduct a full trial on the merits.  Although we framed certain issues for the district court to consider on remand, we in no way delineated all of the questions that might arise during the trial.  In short, the district court retained the necessary discretion to decide any issue that we had not previously addressed.

Transamerica also claims on appeal that Underwriters waived the standing defense by failing to raise it in the post-mandate pretrial stipulation.  Transamerica did in fact make a waiver argument in the district court, but notably only after the trial was completed and Underwriters had filed several motions for judgment as a matter of law.  The district court squarely rejected Transamerica's waiver argument, finding that Underwriters had preserved the standing defense by raising it on multiple occasions throughout the proceedings, including in its answer to the complaint, again in its motion for summary judgment, still again in multiple motions for judgment as a matter of law, and in objections it lodged to Transamerica's proposed jury instructions.  Transamerica, 338 F. Supp. 2d at 1305 (holding that "Underwriters raised the lack of standing defense many times

12

throughout this litigation. Thus, this Court rejects Transamerica's contention that the defense has been waived.").

A district court has "broad discretion" to construe its own pretrial orders and we afford substantial deference to a trial court's decision to allow (or disallow) amendments to pretrial orders. Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1323 (11th Cir. 2004). Indeed, that considerable discretion may include the authority to admit evidence related to a particular affirmative defense, even if that defense was not raised in the pleadings. See Hassan v. United States Postal Serv., 842 F.2d 260, 263-64 (11th Cir. 1988) (affirming the trial court's decision to admit evidence on a defense not raised in the pleadings where the plaintiff had ample notice that the defendant intended to raise the issue at trial). See also, Santiago v. Lykes Bros. S.S. Co., Inc., 986 F.2d 423, 427 (11th Cir. 1993) (opining that a trial court did not abuse its discretion in charging the jury on a theory not mentioned in the pretrial order).

Here, we have thoroughly reviewed the entire record including the trial testimony and the parties' filings before the district court, and the record amply supports the district court's conclusion that Underwriters raised the standing defense in its answer, its motion for summary judgment, its motions for judgment as a matter of law, and in its objections to Transamerica's proposed jury

13

instructions. In fact, we can discern no argument that Transamerica was somehow caught by surprise, or lacked ample notice that Underwriters fully intended to raise the issue if the jury found that Transamerica was only a loss payee.[5]

In this case, the district court had ample discretion to conduct the trial on remand in the order it chose, and in light of the extensive evidence in the record showing that the standing issue was raised on many occasions throughout the

---

[5]Thus, for example, in rejecting Underwriters' motion for judgment as a matter of law made at the close of the plaintiff's case, the district judge engaged in the following colloquy with counsel for both parties:

> THE COURT: One issue that I think you have and can and should preserve is the loss payee issue. It seems to me that whether a loss payee may sue under English law is a legal issue that we could address now. We can deny the motion without prejudice subject to being renewed, depending on what the verdict would be.
> That is, to me, a separate legal issue that I'm at least at this stage I'm not inclined to dispose of. And that is a separate issue from the factual issues of whether the jury could find in this case whether Transamerica is a loss payee in this case. So I think we would be wise to present that issue to them and they are going to say whatever they are going to say and then I am sure you are going to want to renew that issue as a matter of law. Maybe we will never have to reach it.

> COUNSEL FOR UNDERWRITERS: Appreciate that, Your honor.

> THE COURT: Okay. Did you want to say anything?

> COUNSEL FOR TRANSAMERICA: No, Your Honor. That's fine.

Tr. of Oct. 25, 2002 at 166-67. It is abundantly clear from the record that the district court did not want to address the legal issue whether under English law a loss payee who was not an assured had standing to bring a claim under the policies until he had to. Plainly, that issue did not ripen until the jury had returned its verdict that Transamerica was a loss payee but not an assured.

14

proceedings, we decline to disturb the district court's unambiguous finding that Underwriters did not waive the standing defense.[6]

Finally, Transamerica asserts that Underwriters should have been judicially estopped from arguing that a container leasing company is a loss payee under the relevant policies because they had previously taken the opposite position in other cases before different courts. Transamerica contends that the district court erred by not applying the doctrine of judicial estoppel and by refusing to admit evidence indicating the positions Underwriters had taken in the previous cases.[7]

Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process. See New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 1814-15, 149 L. Ed. 2d 968 (2001). The doctrine may be applied to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. See id. at 749, 121 S. Ct. at 1814. We have examined two factors in

---

[6]We also observe that Transamerica had numerous opportunities at trial, prior to the final motion for judgment as a matter of law, to object to the standing issue on the grounds that it was not in the pretrial stipulation. It did not do so.

[7]It does not appear that the district court ever actually ruled on whether judicial estoppel should be applied in this case. This might be because Transamerica never formally moved to have Underwriters judicially estopped; rather, it simply presented the issue in a bench brief submitted to the court during trial. The district court did, however, exclude evidence showing the positions Underwriters had previously taken. Accordingly, because that question is validly before us, we proceed to consider whether judicial estoppel should have been applied.

15

deciding whether judicial estoppel should apply: first, it must be established that the allegedly inconsistent positions were made under oath in a prior proceeding; and, second, the inconsistencies must have been calculated to make a mockery of the judicial system. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).

In New Hampshire, the Supreme Court noted that although the circumstances under which judicial estoppel should be invoked are not reducible to a general formulation of principle, courts have traditionally looked at three basic factors: 1) whether a party's later position was clearly inconsistent with its earlier position; 2) whether the party succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. 532 U.S. at 750-51, 121 S. Ct. at 1815. The Court observed that these factors do not establish "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel"; rather, additional considerations may be appropriate. Id. at 751, 121 S. Ct. at 1815. In Burnes, we analyzed our traditional judicial estoppel considerations in light of the Supreme Court's holding

16

in New Hampshire, and determined that "the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions . . . , and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case." Burnes, 291 F.3d at 1285-86.

In this case, the district court did not abuse its discretion by refusing to admit evidence concerning Underwriters' previous litigation positions related to the status of container leasing companies. Transamerica complains because some of the Underwriters have previously settled cases where a container leasing company maintained a suit as an additional assured without the Underwriters arguing that the plaintiff was a loss payee. Indeed, in some of those cases, an Underwriter subrogated to the interest of a container leasing company actually initiated the suit as a plaintiff, alleging that the leasing company was an additional assured.

On this record, however, we cannot find that the potentially inconsistent litigation positions were taken to make a "mockery" of the judicial system; there has been an inadequate showing that the language describing the status of the relevant parties in the policies in the other cases was identical to the language in the policies in this case. Whether a container leasing company is an assured or a

17

loss payee is wholly dependent upon the language of the relevant insurance policy. The language of the policies in this case plainly was ambiguous, containing alterations and additions that only served to confuse the already unclear terms. Absent a clear showing that the other cases in which the Underwriters took allegedly inconsistent positions involved similarly worded policies, we cannot begin to say that Underwriters were attempting to make a mockery of the judicial system.  See Ezekiel v. Michel, 66 F.3d 894, 904 (7th Cir. 1995) (noting that the Seventh Circuit has generally considered the doctrine of judicial estoppel only in cases involving the same factual circumstances).[8]

_____

[8]Moreover, the doctrine of judicial estoppel, which only applies to a party that actually made a prior inconsistent statement, may not be appropriate in this case because not all of the Underwriters were alleged to have been a part of the prior cases.  See Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1273 (11th Cir. 2004) (finding judicial estoppel inappropriate because the bankruptcy trustee, against whom the estoppel was being sought, had not made inconsistent statements under oath in prior proceedings, and should not be "tainted" by the debtor's conduct). Transamerica concedes that at most, seven of the Underwriters took inconsistent positions - - The Yorkshire Insurance Company, The Threadneedle Insurance Company Ltd., Cornhill Insurance PLC; Phoenix Assurance PLC, Skandia Marine Insurance Company (UK) Limited, Wurttembergische Feuerversicherungs AG, and Norwich Union PLC.  Additionally, we have not yet had occasion to decide whether judicial estoppel should apply when the prior position resulted in a settlement, and not in the court actually adopting a position.  This question has divided the circuits.  Some courts have held that judicial estoppel does not apply when the prior position was asserted in a case that resulted in settlement.  See In re Bankvest Capital Corp., 375 F.3d 51, 60-61 (1st Cir. 2004) (refusing to apply judicial estoppel where prior proceeding ended in settlement); Blanton v. Inco Alloys Int'l, Inc., 108 F.3d 104, 109-10 (6th Cir.), supplemented by, 123 F.3d 916 (6th Cir. 1997) (noting that judicial estoppel should be applied only to positions a party successfully maintained in a prior suit, and that a settlement results in "successful" positions for neither side); Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993) (noting that because a settlement neither requires nor implies judicial endorsement of a particular argument, a position taken in a case that settles cannot give rise to judicial estoppel). Not all courts share this view.  See Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 887 (7th Cir. 2004) (noting that judicial estoppel can apply when the prior dispute resulted in

18

In short, we conclude that neither the law of the case doctrine nor the mandate rule prevented the district court from considering the standing issue on remand, that Underwriters did not waive the right to raise the standing question, and that the district court did not abuse its considerable discretion in refusing to apply the theory of judicial estoppel and excluding certain evidence.

**AFFIRMED**.

---

settlement); <u>Rissetto v. Plumbers Local 343</u>, 94 F.3d 597, 604-05 (9th Cir. 1996) (noting that a favorable settlement is the equivalent of winning a judgment for the purposes of judicial estoppel). We need not address this difficult question because the other elements of judicial estoppel have not been established.