[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13012
_____

D.C. Docket No. 1:07-cv-22988-RWG

BUCKLEY TOWERS CONDOMINIUM, INC.,

Plaintiff-Appellee
Cross-Appellant,

versus

ROSENBAUM MOLLENGARDEN PLLC,

Interested Party-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(September 2, 2016)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and STORY,[*]
District Judge.

STORY, District Judge:

_____

[*] Honorable Richard W. Story, United States District Judge for the Northern District of Georgia,
sitting by designation.

This appeal involves a dispute over attorneys' fees between a client and one of the three law firms that represented it in the underlying insurance litigation. This is the second appeal taken from that litigation that relates to attorneys' fees. The question here is whether the district court properly interpreted and applied the mandate that this Court issued in the first appeal. The client and the law firm each appeal separate orders that the district court issued in the wake of the mandate, and both argue that they were in contravention of this Court's instructions. We find that the district court properly interpreted and applied this Court's mandate in both instances.

## I. BACKGROUND

The underlying litigation began in 2007 when Appellee/Cross-Appellant Buckley Towers Condominium, Inc. ("Buckley") filed a complaint against its insurer to recover on a claim for damage suffered during Hurricane Wilma. This litigation lasted for several years, and during that time Buckley was represented by three separate law firms: Becker & Poliakoff, P.A. ("B&P"), Katzman, Garfinkel & Rosenbaum, LLP ("KGR"), and Appellant/Cross-Appellee Rosenbaum Mollengarden PLLC ("RM").[1] After a trial and an unrelated appeal, Buckley ultimately won a judgment against its insurer for $12,035,449.00.

---

[1] RM began as Rosenbaum Mollengarden Janssen Siracusa, PLLC, but is now just Rosenbaum Mollengarden PLLC.

After the district court entered judgment in favor of Buckley, the magistrate judge entered a report and recommendation ("R&R") that recommended the disbursement from the court's registry of $4,633,646.86 of the judgment among B&P, KGR, and RM as their fees. Specifically, the R&R recommended that RM receive its contingency fee minus the quantum meruit amounts due to B&P and KGR, which would have resulted in the following distribution:

RM:       $3,057,686.86
KGR:      $894,897.00
B&P:      $681,063.00

B&P and KGR objected to their quantum meruit awards, but the district court adopted the R&R in full. B&P and KGR appealed ("KGR Appeal"). While the KGR Appeal was pending, B&P and RM entered into a settlement agreement that resolved B&P's portion of the KGR Appeal. Through that settlement, RM agreed to pay B&P an additional $618,937.00 from its contingency fee in exchange for a dismissal of B&P's appeal. This brought B&P's fee to a total of $1.3 million.

After this settlement, the magistrate judge held a hearing on several motions relating to the disbursement of Buckley's judgment. The result of this hearing was the entry of an order ("Disbursement Order") that called for the immediate disbursement of attorneys' fees to the three law firms from the funds in the court's registry. The Disbursement Order also called for $1,000,000 to remain in the court's registry as bond for the KGR appeal. This $1,000,000 consisted of

3

$900,000 provided by RM and $100,000 provided by B&P.  The Disbursement Order specified that if the district court was reversed in the KGR Appeal, the $1,000,000 would be allocated among B&P, RM, and KGR by direction of the Eleventh Circuit's mandate.  Aside from the $1,000,000 bond, the Disbursement Order called for the disbursement of the remaining registry funds as follows:

| | |
|---|---|
| RM: | $1,538,750.86 |
| KGR: | $894,897.00 |
| B&P: | $1,200,000.00 |

No party appealed the Disbursement Order.

On July 30, 2013, this Court issued its mandate in the KGR Appeal.  *See Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657 (11th Cir. 2013) (opinion issued May 20, 2013); *see also Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 1:07-cv-22988-RWG (S.D. Fla. July 30, 2013) (mandate entered at docket number 663).  We reversed the district court and remanded, finding that the district court failed to properly apply Florida case law when determining how to distribute fees among the three law firms.  Instead, we directed the distribution of fees as follows: (1) to B&P, its contingency fee less the amounts owed to the other two firms; (2) to KGR, its quantum meruit; and (3) to RM, "20/855—or approximately 2.34%—of the fee award remaining after KGR [was] compensated."  We also said that the district court had abused its discretion when it previously calculated KGR's quantum meruit award.  After providing

4

instructions on how to properly calculate that award, we noted that "there is only one issue to be decided on remand—KGR's proper quantum meruit award." Then, in footnote 12, we provided an illustration of how the district court was to divide the funds among the law firms once it determined the amount to which KGR was entitled. Footnote 12 says:

> We note that because B&P settled its claim for $1.3 million, it is entitled to no greater award than that amount to which it agreed. *See Rosenberg*, 409 So. 2d at 1022 (limiting an attorney's fee recovery to the contract fee agreed to by the attorney). Consequently, any award that B&P would be entitled to above the $1.3 million agreed-upon amount should be returned to Buckley. For example, if the magistrate determines KGR's quantum meruit award to equal the $894,897 awarded plus the $75,232.50 sought in appellate fees, for a total of $970,129.50, then (a) RM[ ] would be entitled to $85,696.31 (approximately 2.34% of the remaining $3,663,517.36); (b) B&P would be entitled to its $1.3 million; and (c) the remaining $2,277,821.05 set aside in the court registry for the charging liens would be returned to Buckley. This example is used entirely for demonstrative purposes and is not intended to dissuade the district court from using its sound discretion to determine a proper value for KGR's charging lien.

Following the mandate, Buckley filed a motion to compel RM to return its $1,538,750.86 disbursement to the court's registry, arguing that such action was necessary to comply with the mandate. The magistrate judge entered an order denying this motion, which the district court affirmed. That decision is the subject of Buckley's cross-appeal.

5

On May 19, 2014, the magistrate judge entered an R&R ruling on KGR's fee application.  There, in applying the mandate, the magistrate judge increased KGR's quantum meruit award to $1,198,725.00, which called for an additional disbursement of $303,828.00.  The magistrate judge then ordered that all money remaining in the court's registry after this disbursement be returned to Buckley.  RM objected, arguing that this order improperly distributed the bond funds that RM had posted to Buckley instead of returning them to RM as outlined in the Disbursement Order.  Nonetheless, the district court adopted the R&R, forming the basis for RM's appeal.

This background gives rise to the two issues that we must decide, both relating to the district court's application of the mandate from the KGR appeal.  Buckley raises the first issue: whether the district court violated the mandate when it denied Buckley's motion to compel RM to return to the court's registry the portion of its $1,538,750.86 disbursement that was in excess of 2.34% of the amount that B&P would have received had it not settled with RM.  RM raises the second issue: whether the district court exceeded the scope of the mandate when it ordered that Buckley receive the funds remaining in the court's registry after KGR received its recalculated quantum meruit award.

6

## II. STANDARD OF REVIEW

We review a district court's interpretation of this Court's mandate in a prior case *de novo*. *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). The mandate rule is a "specific application of the 'law of the case' doctrine" requiring that "[a] trial court, upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." *Piambino v. Bailey*, 757 F.2d 1112, 1119-20 (11th Cir. 1985). The trial court must implement "both the letter and the spirit of the mandate taking into account the appellate court's opinion and the circumstances it embraces." *Id.* at 1119 (citations omitted). "Although the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal, it is bound to follow the appellate court's holdings, both expressed and implied." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) (quoting *Piambino*, 757 F.2d at 1120 (citations omitted)).

## III. DISCUSSION

We will address the district court's decisions chronologically. Thus, we begin with its decision denying Buckley's motion to compel. Buckley argues that, to comply with the mandate, the district court should have ordered RM to return $1,458,401.82 to the court's registry. That amount represents the sum that RM

7

received under the Disbursement Order less 2.34% of what B&P would have recovered had it not settled.  In other words, it is the amount distributed to RM in excess of what Buckley claims RM was entitled to under the mandate.

The magistrate judge identified the core difficulty with Buckley's argument: the mandate did not reverse the Disbursement Order.  Nor could it have—the Disbursement Order was never appealed.  Ordering RM to disgorge a portion of the funds it had already received would have required the district court to reopen the Disbursement Order.  But because the Disbursement Order was not the subject of the KGR appeal, the mandate from that appeal left the Disbursement Order untouched.  Reopening it, therefore, would have been beyond what the mandate required on remand.

It is true that footnote 12 of the mandate provides that "any award that B&P would be entitled to above the $1.3 million agreed-upon amount should be returned to Buckley."  At first blush, this seems to call for the return of funds previously distributed to RM.  But other language in the footnote makes clear that while Buckley might recover some of the money originally set aside for attorneys' fees, that recovery would only come from money remaining in the court's registry. Footnote 12 later says, in the context of the hypothetical, that "the remaining $2,277,821.05 *set aside in the court registry* for the charging liens would be returned to Buckley."  So while footnote 12 does contemplate that Buckley might

8

receive some of the money set aside for attorneys' fees, it does not contemplate the disgorgement of funds already distributed under a separate, un-appealed order. For this reason, we find that disgorgement of the distribution RM had already received under the Disbursement Order was beyond the scope of the mandate. The district court did not, therefore, err in adopting the magistrate judge's order denying Buckley's motion to compel.

We next turn to the district court's decision that Buckley—rather than RM—was entitled to the funds left over in the court's registry after KGR received its recalculated quantum meruit award. This ties in closely with the disgorgement issue. As we said above, while the mandate does not contemplate disgorgement, it does contemplate that Buckley would receive any money remaining in the court's registry that B&P would have been entitled to had it not settled. There was money remaining in the court's registry after the magistrate judge recalculated KGR's quantum meruit award and determined that KGR was entitled to an additional $303,828.00. Under the plain language of footnote 12, Buckley was entitled to that money. Thus, the district court did not err in adopting the magistrate judge's R&R awarding Buckley the remaining funds.

9

## IV. CONCLUSION

We **AFFIRM** both the district court's denial of Buckley's motion to compel and its order that the funds remaining in the court's registry after KGR received its full quantum meruit be returned to Buckley.