[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13885
Non-Argument Calendar
_____

D.C. Docket No. 2:06-cv-14201-RLR


GLENN C. SMITH,

Plaintiff-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
LARRY BARRINER,
TONI BOWDEN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 9, 2017)

Before JORDAN, ROSENBAUM and FAY, Circuit Judges.

PER CURIAM:

Glenn C. Smith, a Florida prisoner proceeding pro se, appeals judgment in favor of the Florida Department of Corrections ("FDOC") in his 42 U.S.C. § 1983 action alleging retaliatory transfer in violation of the First Amendment. We affirm in part and dismiss in part.

## I. BACKGROUND

Smith is serving consecutive life sentences for convictions of sexual battery, assault, and a lewd and lascivious act upon a child. He has been incarcerated since 1992. During the course of his incarceration, Smith has filed "between sixty and seventy" lawsuits against the FDOC and its employees, and "between two hundred and three hundred" administrative grievances. Am. Mem. Op. at 3 (Aug. 4, 2015). In February 2003, while incarcerated at the Martin Correctional Institute ("MCI"), Smith filed an appeal from a state court's decision in favor of the FDOC and then initiated another lawsuit against the FDOC. Fifteen days after the lawsuit was filed, the FDOC issued an order to transfer him to the Okeechobee Correctional Institute ("OCI") for "population adjustment." *Id.* at 9. On March 18, 2003, Smith was informed he was being transferred. Smith resisted the transfer by refusing to board the bus, but he ultimately was shackled and forced on the bus to OCI. Upon

2

arrival, Smith was given a disciplinary report for disobeying orders to board the bus.

In August 2006, Smith filed a complaint under 42 U.S.C. § 1983 against the Secretary of the FDOC and Larry Barriner, a former corrections officer at MCI. He alleged his transfer to OCI was retaliatory, challenged the constitutionality of an FDOC regulation providing for disciplinary confinement, and challenged the validity of the disciplinary report he had received. A majority of Smith's claims were dismissed on the pleadings for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B). The district judge dismissed Smith's retaliatory-transfer claim, because Smith failed to identify the individual who ordered his transfer and allege how there was a link between the protected activity and the alleged retaliatory act. On appeal, this court affirmed the dismissal of Smith's retaliatory-transfer claim against Barriner but vacated the dismissal and remanded on the retaliatory-transfer claim against the Secretary of the FDOC, because Smith had alleged facts sufficient to state a claim concerning a practice and custom of retaliatory transfers. *Smith v. Fla. Dep't of Corr.*, 318 F. App'x 726, 728, 730 (11th Cir. 2008).

On remand, the district judge granted summary judgment in favor of the FDOC on Smith's retaliatory-transfer claim and concluded the record showed Smith's transfer was administered by people who had no personal knowledge about him and for non-retaliatory reasons. On Smith's appeal of summary

3

judgment, this court determined only the causation element was at issue and vacated summary judgment regarding Smith's retaliatory-transfer claim, because the district judge wrongly denied Smith a reasonable opportunity for discovery and the inmate affidavits Smith had attached to his complaint, construed in the light most favorable to Smith, were sufficient to allow a factfinder to conclude protected conduct was a motivating factor. *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063-66 (11th Cir. 2013). In 2013 and 2014, inmates Drew C. Hartley, George S. Rivera, and Anthony L. Schiller filed motions to intervene. The district judge denied the motions, because allowing Hartley, Rivera, and Schiller to intervene in Smith's case would circumvent the Prisoner Litigation Reform Act requirement to pay the full amount of the filing fee in the prisoners' own cases.

The parties proceeded to a bench trial on Smith's claim the FDOC had retaliated against Smith in violation of his First Amendment rights by transferring him to a new prison facility shortly after he had filed a lawsuit related to his medical care at MCI in 2003. At trial, Smith was represented by appointed counsel. Smith and thirteen witnesses testified on Smith's behalf.[1] Smith testified as to the number of lawsuits he had filed against the FDOC and his administrative grievances, and he continued to file lawsuits and grievances despite believing he

---

[1] Because Smith has failed to provide this court with a transcript of his bench trial, the summary of the testimony and evidence is derived from the district judge's amended memorandum opinion.

4

had been transferred at least three times in retaliation for his litigation activity.

Smith testified he had filed a lawsuit related to his medical care on February 26,

2003, and was notified on March 18, 2003, he was being transferred to another

institution, and he estimated he was responsible for "two hundred cases in both

state and federal courts." Am. Mem. Op. at 3. Smith also conceded the only

evidence supporting his allegation he was transferred in retaliation for his First

Amendment activities was the temporal proximity between the filing of one of his

lawsuits and his transfer. Absent a showing he suffered a retaliatory transfer, the

issue of whether the FDOC had an unconstitutional practice or custom was

irrelevant and a standing issue would arise. Twelve inmates testified as to their

own alleged retaliatory transfers or threats of retaliatory transfer. Ronald

McAndrews, an FDOC official unfamiliar with Smith's transfer and its

circumstances, testified regarding the FDOC's pattern and practice of retaliatory

transfers.

The FDOC offered testimony from three FDOC employees. Vicki

Newsome, an Assistant Bureau Chief, testified the FDOC used substantially the

same transfer procedures in 2003 as those formalized in the 2005 manual and

transfers could be routine for a wide range of reasons specific to the inmate or

institutional needs, or non-routine for population adjustment or an inmate's

medical needs. Newsome also testified Smith's transfer was a population-

5

adjustment transfer. No one outside the population-management office has the ability to request such a transfer; Smith's 2003 transfer was part of a plan to make room for re-housing a group of "S-3" inmates, a medical needs designation not applicable to Smith, at MCI after a dormitory at another institution capable of housing "S-3" inmates closed. Am. Mem. Op. at 10.

Darlene Lumpkin, an employee in the state classification office, testified she was the employee who selected Smith for transfer out of MCI based on the fact her personal identity code was recorded in the file for his transfer. She followed her usual practice of generating a list of inmates at MCI fitting criteria for the transfer, determining inmate-by-inmate compatibility with the destination facility, and selecting the inmates who fit the criteria and compatibility before moving to the next inmate on the list. She testified she never selected an inmate for transfer with knowledge of the inmate's litigation or grievance activities; she had no direct recollection of the 2003 transfer. Mary Ellen Dayan-Varnum, an employee in the FDOC population management office at the time of Smith's transfer, testified by deposition. After reviewing a spreadsheet used during Newsome's testimony, she believed she had authored the population-adjustment plan affecting Smith.

Following the bench trial, the judge awarded judgment as a matter of law to the FDOC and issued a memorandum opinion stating her findings of fact and conclusions of law. The judge also included a detailed summary of the evidence

6

and arguments at trial.  She concluded, to prove his retaliatory transfer claim, Smith had to show (1) he engaged in constitutionally protected conduct, (2) the FDOC's retaliatory act adversely affected the protected conduct, and (3) there was a causal connection between the retaliatory act and the adverse effect on the conduct.  Once Smith established the protected conduct was a motivating factor behind the harm, the burden of production would shift to the FDOC.  The FDOC could then prevail by showing it would have taken the same action in the absence of the protected activity.

The judge concluded Smith had established the first prong, because the conduct at issue was his First Amendment right to file lawsuits.  With respect to the second and third prongs, the judge noted Smith had to prove the existence of a retaliatory act to satisfy either prong.  To meet his burden, Smith first had to show his own transfer was retaliatory before evidence pertaining to alleged retaliatory policies of the FDOC would become relevant.  The judge concluded Smith failed to make this showing and therefore could not satisfy either the second or third prong.  Therefore, the burden did not shift to the FDOC.

The judge reasoned Smith had conceded his only evidence of retaliation was the temporal proximity between the filing of his lawsuit and the timing of his transfer.  The evidence showed Smith was "a prolific filer," and it "logically follow[ed]" Smith "could subjectively believe a transfer was in retaliation for his

litigation activities because, at any given time, [Smith] would have multiple pending suits or grievances." Am. Mem. Op. at 24. Smith's witnesses, like Smith, testified to their belief their transfers were retaliatory when many of those transfers were, from the perspective of the FDOC, instituted for objective non-retaliatory reasons. The judge found Smith's temporal evidence was "no evidence at all." *Id.* Even assuming Smith had produced sufficient evidence to shift the burden to the FDOC, the FDOC had demonstrated Smith was transferred as part of a general-population-adjustment transfer and was selected for this transfer without any knowledge on behalf of the FDOC of his litigation activities. The judge expressed no opinion on the evidence Smith submitted at trial with respect to the alleged practices of retaliation of the FDOC, because she concluded this evidence was irrelevant to her decision.

After the judge entered the judgment, the FDOC filed a motion to tax costs, requesting a total award of $5,371.13, consisting of $5,259.53 for deposition transcripts and court reports, $60.00 for subpoena service fees, and $51.60 for copies. Smith opposed the motion. The judge found the $30 rush fee reasonable, declined to deny costs based on Smith's indigent status, and granted the FDOC $5,371.13 in costs. Smith later filed a motion to alter or amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e), and disputed certain factual

8

findings. The judge granted the motion only to the extent she issued an amended order clarifying the legal standard regarding causation.

Smith timely appealed and paid the filing fees for the appeal. He filed a motion in the district court to grant him leave to proceed in forma pauperis ("IFP"), so he could obtain the trial transcript without paying the cost. The judge denied the motion. Smith filed a transcript order form in this court and requested the trial transcript. This court notified Smith he must, within 14 days, make financial arrangements with the court reporter for preparation of the trial transcript, or the appeal would be dismissed without further notice. Smith moved for an extension and claimed his IFP motion was still pending in the district court. The FDOC moved to dismiss the appeal and argued Smith failed to make timely financial arrangements to obtain the trial transcript. Smith responded and also moved for appointment of counsel.

Construing Smith's motion for extension of time as a motion for transcripts at the government's expense, this court denied that motion and denied Smith's motion for appointment of counsel. The judge held in abeyance the motion to dismiss of the FDOC and granted Smith an extension to obtain and file a copy of the trial transcript. After the extension period expired, the FDOC moved for a ruling on its motion to dismiss and argued the appeal should be dismissed with

prejudice. This court then issued an order directing the FDOC's motion be carried with the case. The motion is still pending before this court.

On appeal, Smith alleges numerous claims of error, primarily challenging the judge's conclusion he failed to present evidence sufficient to establish he suffered a retaliatory transfer, such that the burden would shift to the FDOC to show the transfer served legitimate penological interests. Smith also alleges the judge erred in awarding costs to the FDOC and in denying the motions to intervene filed by inmates Hartley, Rivera, and Schiller.

## II. DISCUSSION

### A. Failure to File a Transcript

The FDOC moves to dismiss Smith's appeal for failure to file the trial transcript with this court and argues we cannot review Smith's arguments without reference to the trial transcript. Under Federal Rule of Appellate Procedure 10(b), the appellant has a duty to pay for the trial transcripts, if he intends to challenge evidentiary findings on appeal. "*[P]ro se* appellants, like appellants represented by counsel, must provide trial transcripts in the appellate record to enable this court to review challenges to sufficiency of the evidence." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). We have dismissed appeals where appellants have failed to file the trial transcript, *Abood v. Block*, 752 F.2d 548, 550 (11th Cir. 1985), but we have "decline[d] to do so," where the district judge issued a memorandum order,

"unlike [in] *Abood,* where the district court's findings which appellant sought to overturn were made orally." *United States v. Milam*, 855 F.2d 739, 741 n.3 (11th Cir. 1988).

Smith indisputably has failed to file the trial transcript in this case; the judge, however, did issue a memorandum order containing a detailed summary of the evidence presented at trial. While we decline to dismiss the appeal, *id.*, we must determine whether the omission of the transcript renders review of any issue impossible, *Loren*, 309 F.3d at 1304. We conclude we cannot review meaningfully the following five issues without consulting the trial transcript: (1) whether the district judge erred in failing to consider the other circumstantial evidence of Smith's retaliatory transfer; (2) whether the district judge erred in reaching the question of whether the temporal proximity of his transfer to his previous litigation was, alone, insufficient to shift the burden of proof to the FDOC, without considering other available circumstantial evidence; (3) whether the judge erred in failing to admit evidence of other forms of retaliation in addition to that of retaliatory transfers; (4) whether the judge erred in imposing limitations on inmate testimony seeking to introduce, as FDOC party admissions, an OCI sergeant's comments regarding retaliatory transfers; and (5) whether the judge erred by alternatively finding the FDOC presented sufficient evidence Smith's transfer was for non-retaliatory reasons, because the judge failed to consider whether those

11

reasons were pretextual.  Smith's arguments regarding each of these issues rely on "other evidence" or discussions presented at the bench trial and not reproduced in either of the judge's memorandum orders.  Failure to comply with the Rule 10(b) requirement of a trial transcript, in this case, results in the affirmation of the evidentiary findings of the district judge, because this court is unable to review the alleged error.  *See id.*

## B. Retaliatory Transfer

### 1. Relevance of Custom or Practice

Smith argues the district judge erred in concluding, unless Smith presented evidence of his own retaliatory transfer, the evidence regarding practice or custom of the FDOC was irrelevant.  After a bench trial, we review de novo a district judge's conclusions of law and factual findings for clear error.  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009).  In custom or policy cases, we have held the injury and causation elements are distinct, and a plaintiff's failure to prove injury renders the consideration of a practice or custom irrelevant.  *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("Since we have determined that [the defendant's] conduct did not cause the [plaintiffs] to suffer a constitutional deprivation, we need not inquire into [the defendant's] policy and custom . . . .").

The judge did not err in concluding, unless Smith presented evidence of his own retaliatory transfer, the evidence regarding practice or custom of the FDOC was irrelevant.  Smith failed to present evidence he personally suffered a retaliatory transfer.  He presented only evidence other inmates suffered retaliatory transfers.  We have held, absent a showing of constitutional injury, the inquiry into practice or custom is irrelevant.  *Rooney*, 101 F.3d at 1381.  Smith conceded at trial his failure to prove his own retaliatory transfer would render irrelevant his witnesses' testimony showing practice or custom by virtue of other inmates' transfers.  The judge properly concluded, because Smith failed to present evidence of his own retaliatory transfer, the evidence regarding practice or custom of the FDOC was irrelevant.

### 2. Law-of-the-Case Doctrine

Smith argues this court's conclusions in *Smith*, 713 F.3d at 1063-65, our earlier decision in this case vacating the order granting summary judgment to the FDOC, bound the district judge after the bench trial to consider Smith's evidence of a causal connection as dispositive proof of Smith's retaliatory transfer.  We review de novo the district judge's application of the law-of-the case doctrine.  *Alphamed, Inc. v. B. Braun Med., Inc.*, 367 F.3d 1280, 1285 (11th Cir. 2004).  Under that doctrine, an appellate court's findings of fact and conclusions of law are generally binding in all subsequent proceedings in the same case in the trial court

or on a later appeal. *This That & The Other Gift & Tobacco, Inc. v. Cobb Cty.*, 439 F.3d 1275, 1283 (11th Cir. 2006). This doctrine only applies to the extent the issue in question was within the scope of the prior appeal. *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1332 (11th Cir. 2005).

Because of our decision to vacate summary judgment, the district judge was not precluded at trial from concluding Smith's trial evidence concerning retaliation was insufficient to shift the burden to the FDOC to show the transfer served a legitimate penological interest. In vacating the district judge's summary judgment in favor of the FDOC on Smith's retaliatory-transfer claim, we concluded "only the causal connection element [was] in question" and Smith's witness testimony "established that one could conclude that the protected conduct was a motivating factor." 713 F.3d at 1063. The judge's determination regarding the sufficiency of Smith's evidence of injury in fact for burden shifting was outside the scope of our prior decision. *Transamerica Leasing, Inc.*, 430 F.3d at 1332.

Our decision in *Smith* was limited to reviewing an entirely separate element of Smith's claim (causation, not injury) and only determining whether a factfinder could conclude protected conduct was a motivating factor, not whether retaliation occurred as a conclusive fact. *Smith*, 713 F.3d at 1063. We also partially premised our decision on the fact Smith had been improperly denied a reasonable opportunity for discovery. *Id.* at 1064. Neither of these limitations nor the

14

discovery defect was at issue, when the district judge determined Smith failed to meet his burden at trial to show he suffered a retaliatory transfer. The judge was not precluded, under the law-of-the-case doctrine, from concluding Smith failed to produce sufficient evidence of his retaliatory transfer to shift the burden to the FDOC. *Transamerica Leasing, Inc.*, 430 F.3d at 1332.

### 3. Temporal-Proximity Evidence

Smith argues the district judge's finding the temporal proximity between Smith's litigation and the alleged retaliatory transfer was insufficient to shift the burden of proof to the FDOC was improper. We review for clear error a district judge's findings of fact, including her determinations regarding the weight of evidence when acting as factfinder in a bench trial. *Fischer v. S/Y Neraida*, 508 F.3d 586, 591-92 (11th Cir. 2007). Once a plaintiff establishes protected conduct motivated the harm, the burden of production shifts to the defendant to show it would have taken the same action absent the protected activity. *Smith*, 713 F.3d at 1063. The judge's findings will stand so long as they are supported by substantial evidence. *Fischer*, 508 F.3d at 592 (noting the appellant bears a heavy burden, especially where the evidence is largely testimonial, because the district judge had the ability to observe the witnesses and evaluate their testimony and credibility firsthand). We may reverse such determinations only when we are left with a definite and firm conviction a mistake has been made after reviewing the entire

15

evidence.  *Lincoln v. Bd. of Regents of the Univ. Sys. of Ga.*, 697 F.2d 928, 939-40 (11th Cir. 1983).

The district judge did not clearly err in determining temporal proximity was, alone, insufficient to satisfy Smith's burden of production.  The judge afforded little weight to Smith's evidence of temporal proximity between Smith's litigation and his alleged retaliatory transfer, because the abundance of Smith's litigation and grievances rendered it likely any transfer for any purpose would be temporally proximate to such activity.  In arriving at this finding, the judge relied on our prior statement "Smith is an extremely litigious inmate, having filed at least ten separate lawsuits against the FDOC and its employees from 2001 to 2006," *Smith*, 713 F.3d at 1061, and excerpts from the trial transcript reproduced in the judge's amended memorandum order, stating:

> THE COURT: How many grievances and/or lawsuits did you file before March - April 2001?
>
> PLAINTIFF [Mr. Smith]: I can't say without listing my litigations, I would say approximately five or six.  2001 – I'm sorry, I was up to about 15 to 20, I believe, and grievances in regard to that would be perhaps over a hundred, between a hundred and 200.

Am. Mem. Op. at 17 (alteration in original).  In view of the evidence available, the judge's decision to attach low weight to Smith's temporal-proximity evidence had substantial support within the record.  In contrast, the judge found credible the FDOC witnesses' testimony regarding the legitimacy of Smith's transfer.  We

16

affirm, because the district judge did not clearly err in determining temporal proximity alone was insufficient to satisfy Smith's burden of production and shift the burden to the FDOC. *Fischer*, 508 F.3d at 591-92.

### 4. Extraneous Statements

Smith argues the district judge erred in making extraneous statements regarding whether, in some cases, prison officials may have valid penological interests in transferring prisoners based on their extensive litigation or grievance practice. We need not review a judge's statements made in dicta, because appeals to this court are from the judge's final judgment and not the opinion. *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1420 n.13 (11th Cir. 2011) (citing *United States v. $242,484.00*, 389 F.3d 1149, 1153 (11th Cir. 2004) (en banc) (holding an "appeal is not from the opinion of the district court, but from its judgment")); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 449 (1992) (holding "a federal court has no authority to give opinions upon . . . abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue" (citation and internal quotation marks omitted)). Dicta statements are those in an opinion unessential to the decision of a case. *See Schwab v. Crosby*, 451 F.3d 1308, 1327 (11th Cir. 2006) ("[T]hat which is not necessary to the decision of a case is dicta.").

In delivering her opinion, the district judge discussed some cases where legitimate penological interests may motivate transferring a prisoner on the basis of that prisoner's extensive litigation or grievances, such as when that activity interferes with administration or staff morale. The judge made clear this discussion was wholly irrelevant to her decision and made no findings regarding the evidence on this topic. This discussion was dicta, because it was not part of the decision of the case. *Schwab*, 451 F.3d at 1327.

## C. Award of Costs

Smith challenges the district judge's award of costs to the FDOC and argues his § 1983 action was not frivolous, unreasonable, or groundless. We review a judge's decision whether to award costs to the prevailing party for abuse of discretion. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007). An abuse of discretion occurs if the judge bases an award upon findings of fact that are clearly erroneous. *Id.*

We generally will not consider an issue not raised in the district court. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). We have recognized five exceptions, which arise when (1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the party had no opportunity to raise the issue in district court; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or

18

(5) the issue presents significant questions of general impact or of great public concern. *Id.* at 1332.

Federal Rule of Civil Procedure 54(d) provides a prevailing party is entitled to an award of costs. Fed. R. Civ. P. 54(d)(1); *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 254 F.3d 987, 1012 (11th Cir. 2001). These costs include (1) fees of the clerk and marshal, (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case, (3) fees and disbursements for printing and witnesses, (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case, (5) docket fees, and (6) witness fees authorized by statute. 28 U.S.C. § 1920. Rule 54(d) establishes a presumption costs are to be awarded to a prevailing party but vests a district judge with discretion to decide otherwise. *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc). Although the district judge may not consider the relative wealth of the parties in awarding costs, she may consider the non-prevailing party's financial status. *Id.* at 1039.

Smith makes three arguments concerning this issue: (1) the reasonableness of the judge's award of $0.15 per page; (2) the propriety of awarding costs to a party represented by state attorneys, because that party actually bears no costs; and (3) the propriety of the judge's award of costs against an indigent plaintiff. Smith

19

failed to preserve the first and second of these arguments, because he failed to present them to the judge.

None of the *Access Now* exceptions apply to revive these unpreserved arguments. These arguments are not "pure questions of law," because they raise questions of fact regarding whether the copying costs were actually between $0.03 and $0.07 per page and whether the FDOC bore any of the costs on its own. Smith does not argue he had no opportunity to raise these issues in the district court; he makes no argument the interest of substantial justice is at stake in these issues. The resolution of these issues is not beyond any doubt, because their review would require us to evaluate factual questions on matters for which the district judge did not make specific findings. *Access Now*, 385 F.3d at 1334. Finally, it does not appear, and Smith makes no argument, these arguments present significant questions of general impact or great public concern, given Smith's arguments are couched in the narrow terms of whether the Secretary of the FDOC had no individually incurred costs to be reimbursed and whether $0.05 to $0.07 was a better estimate of the Florida Attorney General's costs for copies and personal time. Because Smith failed to first present them in district court, we decline to review these arguments. *Id.* at 1331, 1335 (stating reviewing such arguments, "without the benefit of any record or district court ruling, invites disaster for an appellate court").

Smith's remaining preserved argument regarding the propriety of the district judge's award of costs against an indigent plaintiff similarly fails.  A district judge may consider the non-prevailing party's indigence.  In those circumstances, however, the judge (1) ordinarily should require substantial documentation of a true inability to pay, and (2) may not altogether decline to award costs.  *Chapman*, 229 F.3d at 1039.  In *Chapman*, we ultimately reversed the grant of costs because we could not discern from the district judge's order whether the judge understood he had discretion to consider the non-prevailing party's indigent status.  *Id.* at 1039-40 (noting we would assume district judges were aware of this discretion in the future).  Such an error is not present in Smith's case, where the district judge expressly considered Smith's indigence and declined to reduce costs on that basis.  The judge did not abuse her discretion in awarding costs to the FDOC, despite Smith's indigence.  *Mathews*, 480 F.3d at 1276.

## D. Other Prisoners' Motions to Intervene

Smith argues the district judge erred in denying the motion to intervene from inmates Hartley, Rivera, and Schiller.

> Litigants must establish their standing not only to bring claims, but also to appeal judgments.  Though similar and overlapping, the doctrines of appellate standing and trial standing are not identical.  The primary limitation on a litigant's appellate standing is the adverseness requirement which is one of the rules of standing particular to the appellate setting.  Only a litigant who is aggrieved by the judgment or order may appeal.

21

*Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353-54 (11th Cir. 2003) (citations, internal quotation marks, and alteration omitted).  Even where a party would have appellate standing for the purposes of challenging some final rulings by the district judge, the appellant may lack standing to appeal other rulings not affecting the appellant's interests.  *Id.* at 1354.  A party generally may not appeal to protect the rights of others.  *Hawes v. Gleicher*, 745 F.3d 1337, 1342 (11th Cir. 2014).

The denial of the motions to intervene from inmates Hartley, Rivera, and Schiller implicated only their rights.  Smith's rights were not implicated; he may not appeal to protect his fellow inmates' rights.  We dismiss Smith's appeal as to this claim of error, because he lacks standing to bring it; we therefore lack jurisdiction to review it.  *Wolff*, 351 F.3d 1353-54.

**AFFIRMED IN PART AND DISMISSED IN PART.**